In the Matter of the Judicial Settlement of the Account of Proceedings of SARA K. COHN and LOUIS J. ADLER, as Executrix of and Trustees under the Last Will and Testament of LEOPOLD COHN, Deceased.

HERBERT COHN and FRANK COHN, Appellants; SARA K. COHN and LOUIS J. ADLER, as Executrix and Trustees, and Others, Respondents.

First Department, May 2, 1919.

Decedent's estate — gift inter vivos by instrument in writing of certificates of stock unaccompanied by actual delivery — evidence establishing constructive or symbolical delivery effecting gift — when actual delivery not essential to validate gift — failure of widow to assert claim upon prior intermediate accountings does not bar her right to gift.

Where a decedent wrote out and delivered to his wife in the presence of his entire family on his wife's birthday an instrument purporting to give to her as a present for her birthday 500 shares of the common stock of a corporation in which he owned 7,213 shares, all of which were held by a firm of which he was a member and were not delivered to him during his lifetime, and it appears that there are no rights of creditors involved, and no suggestion of fraud, and that the decedent when he delivered the paper to his wife stated that he had not possession of the stock but as soon as he got it he would give it to her, there was a good constructive or symbolical delivery effecting a gift *inter vivos* of the stock.

The rule that the delivery of the thing given is one of the essential elements to constitute a valid gift is not inflexible, especially where the gift is based upon an instrument in writing.

The widow is not prevented from asserting her claim to the stock because in two prior intermediate accountings as executrix under her husband's will both of which were made on applications for resignations by executors, her claim was not in any way referred to. The only effect of said accountings upon the claim was to set the Statute of Limitations running.

PAGE and DOWLING, JJ., dissented, with opinion.

APPEAL by Herbert Cohn and Frank Cohn, objectors, from a decree of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 13th day of July, 1918, judicially settling the accounts of the executrix of the last will and testament of Leopold Cohn,

deceased, and also the accounts of the trustees under said will.

*Abraham Stern*, for the appellants.

*Samuel Hoff*, for the respondents executrix and trustees.

*Leslie J. Tompkins*, special guardian, respondent.

SHEARN, J.:

This appeal involves the validity of a gift of certificates of stock, effected by the execution and delivery of an instrument of gift, unaccompanied by actual delivery of the certificates.

On September 20, 1911, the decedent, Leopold Cohn, a resident of the city of New York but then temporarily residing with his family at West End, N. J., wrote out and delivered to his wife, in the presence of his entire family, on his wife's birthday, the following paper:

" WEST END, N. J., *Sept.* 20, 1911.

" I give this day to my wife, Sara K. Cohn, as a present for her (46) forty-sixth birthday (500) five hundred shares of American Sumatra Tobacco Company common stock.

" LEOPOLD COHN."

The donor died six days after the delivery of this instrument. At the time of the gift the donor was the owner of 7,213 shares of the common stock of the American Sumatra Tobacco Company, but the stock was in the name and possession of his firm of A. Cohn & Co. and deposited in a safe deposit box in the city of New York, which was in the name of and belonged to the firm. This firm consisted of the donor, his brother Abraham, and his nephew Leonard A. Cohn, and was dissolved by the death of Abraham Cohn on August 30, 1911. Prior to that time the firm had 18,033 shares of the Sumatra stock in certificates of 100 shares each, standing in the firm name. On December 20, 1910, the stock had been charged off on the books and was not an asset of the firm after that time. The testator was entitled to forty per cent or 7,213 shares of the stock held in the firm name, but there had never been an actual delivery of the certificates by the firm

First Department, May, 1919.              [Vol. 187.

to the donor in his lifetime.   Just prior to his death the donor
and agreed to enter into a new partnership and he was to
contribute some of the shares to a new firm as an asset.   On
September 22, 1911, two days after the delivery of the
instrument of gift, the donor directed his counsel to hurry
the new partnership agreement, because he wished to get
the Sumatra stock belonging to him, which was to be delivered
when the new partnership agreement was signed, which matter
was to be closed on September 26, 1911, the day the donor
died.   The execution and delivery of the instrument of gift
was established by the testimony of the two daughters of the
donor, who were present at the time of its delivery, and
their testimony is to the effect that their father handed the
paper to the mother, in the presence of the whole family
and said he gave it to her as a birthday present, that he had
not possession of the stock, but as soon as he got it he would
give it to her.   Some stress is laid by the appellants upon
the testimony that the donor " said that he could not give her
the stock because it was in the company, but as soon as he
could get it he would give it to her," which it is claimed
evidences an intent to make a gift in the future instead of
a present gift.   This contention is completely overborne by
the wording of the instrument itself, which reads: " I give
this day; " also by the plain intention of the donor to make
a birthday gift to his wife, the birthday being the day on
which the instrument of gift was executed and delivered.
When the donor explained that he could not " give " her the
stock that day " because it was in the company " and
said that " as soon as he could get it he would give it
to her," it is quite obvious that he meant that he could
not deliver the stock that day but would as soon as he could
get it.

There being no rights of creditors involved, no suggestion
of fraud, the intention to make the birthday gift being con-
clusively established, the gift being evidenced by an instrument
of gift executed and delivered to the donee on her birthday,
and ever since retained by her, and the circumstances sur-
rounding the making of the gift affording a reasonable and
satisfactory excuse for not making actual delivery of the
certificates at the time the gift was made, there was in my

opinion a valid and effectual gift of the certificates mentioned in the instrument of gift.

There is no doubt that it has been held in a long line of cases in this State that delivery of the thing given is, as a general rule, one of the essential elements to constitute a valid gift. (*Beaver* v. *Beaver*, 117 N. Y. 421; *Young* v. *Young*, 80 id. 422.) But it is equally true that the rule requiring actual delivery is not inflexible. (*Matter of Van Alstyne*, 207 N. Y. 298; *McGavic* v. *Cossum*, 72 App. Div. 35; *Matter of Mills*, 172 id. 530; affd., 219 N. Y. 642.) In *Beaver* v. *Beaver* (*supra*) it was said that the delivery may be symbolical, as where the donor gives to the donee a symbol which represents possession. It was held in *McGavic* v. *Cossum* (*supra*), where an instrument of gift of bonds was delivered, that actual delivery of the bonds was excused where the only reason for not making delivery was the feeble condition of the donor and the fact that the bonds were in the custody of a bank in a nearby city. It was said in *Matter of Van Alstyne* (*supra*): " The delivery necessary to consummate a gift must be as perfect as the nature of the property and the circumstances and surroundings of the parties will reasonably permit. * * * It is true that the old rule requiring an actual delivery of the thing given has been very largely relaxed, but a symbolical delivery is sufficient only when the conditions are so adverse to actual delivery as to make a symbolical delivery as nearly perfect and complete as the circumstances will allow."

As the rule requiring delivery is clearly subject to exceptions, in order to apply it correctly in varying circumstances resort should be had to the reason for the rule. Under the civil law delivery was not requisite to a valid gift, but it was made a requisite by the common law as a matter of public policy, to prevent mistake and imposition. (*Noble* v. *Smith*, 2 Johns. 52, 56; *Brinckerhoff* v. *Lawrence*, 2 Sandf. Ch. 400, 406.) The necessity of delivery where gifts resting in parol are asserted against the estates of decedents is obvious; but it is equally plain that there is no such impelling necessity when the gift is established by the execution and delivery of an instrument of gift. An examination of a large number of cases in this State discloses the significant facts that (1) in every case where the gift was not sustained, the gift rested upon

parol evidence; and (2) in every case of a gift evidenced by the delivery of an instrument of gift, the gift has been sustained. In the former category are included the cases of *Beaver* v. *Beaver* (*supra*); *Matter of Van Alstyne* (*supra*); *Jackson* v. *Twenty-third Street R. Co.* (88 N. Y. 520); *Young* v. *Young* (*supra*); *Matter of Crawford* (113 N. Y. 560); *Curry* v. *Powers* (70 id. 212); *Gannon* v. *McGuire* (160 id. 476); *Champney* v. *Blanchard*, 39 id. 111). In the latter category are included *Hunter* v. *Hunter* (19 Barb. 631); *Matson* v. *Abbey* (70 Hun, 475; affd., as to the gift, 141 N. Y. 179); *McGavic* v. *Cossum* (*supra*); *Matter of Mills* (*supra*). In *Young* v. *Young* (*supra*) there was a writing but it was not an instrument of gift; it was a mere declaration of the donor that the bonds were the property of the donee and expressly reserving an interest in the donor. While the court said in *Ridden* v. *Thrall* (125 N. Y. 572), in sustaining a gift *causa mortis* where there was both a writing and delivery, that the writing alone was not sufficient, it is to be noted that the written instrument was not delivered to the donee. It is interesting to note that in *Matson* v. *Abbey* (*supra*), sustaining a gift evidenced by an instrument of assignment without delivery of the property assigned, the court quotes with approval the statement of the English law in *Irons* v. *Smallpiece* (2 Barn. & Ald. 551, 552) made by Abbott, C. J.: " I am of opinion that by the law of England, in order to transfer property by gift, there must either be a deed or instrument of gift, or there must be an actual delivery of the thing to the donee." Based upon decisions in numerous other jurisdictions, it is stated in 20 Cyc. 1197 that: " The general rule is that a gift of property evidenced by a written instrument executed by the donor is valid without a manual delivery of the property." I am inclined to think that this is a broader statement than the New York cases would justify, especially in view of *Matter of Van Alstyne* (*supra*), for it does not assume a delivery of the instrument of gift. But in view of the decision of this court in *McGavic* v. *Cossum* (*supra*) it seems to me beyond serious question that the delivery of the instrument of gift in the instant case constituted a good symbolical delivery. In the *McGavic* case a woman owning bonds which had been deposited by her in a bank for safekeeping during an illness from which

she died three weeks later gave to her niece the original memorandum of the purchase of the bonds indorsed with the following statement:

"POUGHKEEPSIE, *November* 23, 1901.

"I have this day given my niece, Fannie H. McGavic, bond 2000 Reg. 4 per cent.DELIA C. ROBINSON."

Mr. Justice McLAUGHLIN said: "We are of the opinion that the plaintiff was entitled to the bonds; that what was done constituted a good gift, *inter vivos*. Actual delivery, by reason of the illness of the owner of the bonds, and their possession at that time by the bank, was physically impossible, but there was present, as evidenced by the writing of the deceased, not only the intention to *then* give, but also the intention to *then* deliver the thing given. The owner did all she could do in this respect. It was a good constructive or symbolical delivery, and this, under the circumstances, was sufficient to vest good title in the plaintiff. (14 Am. & Eng. Ency. of Law [2d ed.], 1021, and cases cited.)" In the instant case, on the day the gift was made at West End, N. J., the certificates of stock were in a safe deposit box in New York city. Furthermore, there were the complications above referred to in the partnership relations and in the fact that the certificates were in the partnership strong box, made out in the name of the firm. These were circumstances and surroundings tending to excuse manual delivery and to make a symbolical delivery effective. In addition, as was said by Mr. Justice McLAUGHLIN in the *McGavic* case, "there was present, as evidenced by the writing of the deceased, not only the intention to *then* give, but also the intention to *then* deliver the thing given. * * * It was a good constructive or symbolical delivery." The instrument of gift was a symbol which represented the donee's right of possession. It was no more revocable than an assignment. A gift has been judicially defined as a voluntary transfer of property by one to another, without any consideration or compensation therefor. (*Gray* v. *Barton*, 55 N. Y. 68.) A voluntary transfer or assignment unaccompanied by manual delivery was upheld, as we have seen, in *Matson* v. *Abbey* (*supra*). It must, therefore, have been held irrevocable. There is no apparent reason why

a gift evidenced by an instrument of gift duly delivered is any more revocable than an assignment without consideration. Both strip the donor of dominion over the subject of the gift and place in the hands of the donee evidence of right to possession.

Therefore, applying the rule of delivery in the light of the reason which gave birth to it, and finding here no possibility of fraud or imposition, and no doubt whatever concerning the intention of the donor, and finding full support in the precedent of *McGavic* v. *Cossum* (*supra*), it is my opinion that there was a good constructive or symbolical delivery, consisting of the delivery of the instrument of gift, and that the gift should be sustained.

The claim of the widow to the 500 shares of Sumatra stock is further resisted by the appellants on the ground that in two intermediate accountings of the widow as executrix and, with another, as trustees under her husband's will, both of which accountings were made on applications for resignations by executors, the widow's claim was not in any way referred to but was purposely kept out of the accounting, by advice of counsel. We are all of the opinion that these intermediate accountings and the decrees entered thereupon did not conclude the claimant from asserting her claim in this proceeding. There was a good reason for withholding the claim and the only result of so doing has been to enhance enormously the value of the estate. The widow promptly made her claim to the other executors. Its validity could only be determined on a settlement of the accounts. The two intermediate accountings were merely for the purpose of allowing executors to resign. The question of the widow's claim was not necessary to the determination there involved. The only effect of these accountings on this claim was to set the Statute of Limitations running, for the executor must present his claim within six years from the first accounting. (Code Civ. Proc. § 2679.) While these intermediate accounts showed the entire 7,213 shares, or the proceeds thereof, as a part of the principal of the trust, the claimant was the recipient of the income therefrom and no rights accrued to any one else, nor did any one change his position in reliance upon the statement of that fact in the accountings.

The decree of the surrogate should be affirmed, with costs and disbursements to the respondents executrix and trustees, and disbursements of the special guardian, respondent.

CLARKE, P. J., and SMITH, J., concurred; DOWLING and PAGE, JJ., dissented.

PAGE, J. (dissenting):

In my opinion there was not a valid gift *inter vivos* of the 500 shares of stock of the American Sumatra Tobacco Company by the testator to Sara K. Cohn. In order to arrive at a clear understanding of the transaction it is essential that we should bear in mind the situation of the parties, the conditions under which the stock was held, and the actions of the testator with reference thereto, before and after the delivery of the paper to his wife on September 20, 1911. A brief resumé of the material facts is as follows:

The stock stood on the books of the American Sumatra Tobacco Company in the name of the copartnership of A. Cohn & Co. and until December 28, 1910, was an asset of the corporation. On that date the stock was allotted to the copartners, as their individual property, that is the proportion to which each partner was entitled was charged against his contribution to the capital account and proper entries made transferring the stock from the capital account of the firm to the credit of the individual members. Thus Abraham Cohn was credited with 9,466 shares, the testator with 7,213 shares and Leonard A. Cohn with 1,352 shares. The shares were not physically delivered nor transferred on the books of the corporation, but remained in the safe deposit box in the city of New York in the firm name. Any one of the partners, however, at any time, could have taken his proportion of the stock which was in certificates of $100 each and caused the same to be transferred to himself, individually, but by reason of the desire to control the election of directors from which they obtained a business advantage, they allowed the stock to remain in the firm name. Abraham Cohn died in August, 1911, and the two surviving partners began liquidation of the firm's business. Negotiations were opened for the organization of a copartnership, consisting of the testator, Leonard A.

First Department, May, 1919.          [Vol. 187.

Cohn and one Lichtenstein. The testator agreed to contribute some of this stock as an asset to the new copartnership, and as it required 7,000 shares to secure the election of a director, the testator's holdings were to be kept intact, so that the new copartnership should have the benefit thereof. The testator died suddenly on the 26th day of September, 1911, the day upon which the articles of copartnership were to have been signed. Prior to that time the testator had been in good physical condition and was attending to the business of liquidating the affairs of the old firm and the organization of the new copartnership at his place of business in New York city. When the paper was delivered to his wife, the daughters testified that the testator said: " That he could not give her the stock because it was in the company, but as soon as he could get it he would give it to her." From the foregoing fact, I am of opinion that the attempted gift was invalid. There was no delivery of the stock either actual or constructive. The testator still retained dominion and control over it for use in the business of the new copartnership.

The rules by which the validity of gifts *inter vivos* must be tested are thus stated in *Beaver* v. *Beaver* (117 N. Y. 421, 428), cited with approval in *Matter of Van Alstyne* (207 id. 298, 306): " The elements necessary to constitute a valid gift are well understood and are not the subject of dispute. There must be on the part of the donor an intent to give, and a delivery of the thing given, to or for the donee, in pursuance of such intent, and on the part of the donee, acceptance. The subject of the gift may be chattels, choses in action, or any form of personal property, and what constitutes a delivery may depend on the nature and situation of the thing given. The delivery may be symbolical or actual, that is, by actually transferring the manual custody of the chattel to the donee, or giving to him the symbol which represents possession. * * * But delivery by the donor, either actual or constructive, operating to divest the donor of possession of and dominion over the thing, is a constant and essential factor in every transaction which takes effect as a completed gift. * * * The intention to give is often established by most satisfactory evidence, although the gift fails. Instruments may be ever so formally executed by the donor, pur-

porting to transfer title to the donee, or there may be the most explicit declaration of an intention to give, or of an actual present gift, yet unless there is delivery the intention is defeated. Several cases of this kind have been recently considered by this court. (*Young* v. *Young*, 80 N. Y. 438; *Jackson* v. *Twenty-third St. Ry. Co.*, 88 id. 520; *In re Crawford*, 113 id. 560.) "

In the present case the writing, taken alone, would seem to show the intention of the donor to make an actual present gift, for he says, "I give this day to my wife," yet the delivery of the writing was accompanied by the statement "that he could not give her the stock because it was in the company, but as soon as he could get it he would give it to her." There is, therefore, a clearly expressed intention to give at a future day, and the acts of the testator showed an intention to retain the dominion and control of the stock, meanwhile, in himself.

A gift *inter vivos* has no reference to the future, while a gift *causa mortis* has reference to a condition subsequent. The latter before the happening of the condition is revocable, while the former is irrevocable. Some confusion has arisen in the cases from a failure to recognize this distinction between these two forms of gift. A gift is a voluntary transaction without consideration. Until the donor has divested himself absolutely and irrevocably of the title, dominion and control of the subject of the gift, he has the power to revoke, and a court of equity will not compel him to complete his gift. (*Curry* v. *Powers*, 70 N. Y. 212; *Lehr* v. *Jones*, 74 App. Div. 54.) When a chose in action has been delivered to a purchaser in good faith and for a valuable consideration, he acquires a good title in equity, although no assignment has been made, and a court of equity will compel the transfer of the legal title. There is no such right in the donee of an incomplete gift. He has paid nothing for it, and as long as the donor retains the title, dominion or possession of the subject of the proposed gift, the donee has no standing in any court to enforce the gift. (*Johnson* v. *Spies*, 5 Hun, 468.)

The respondents claim, however, that the delivery of this paper writing was a constructive delivery of the stock, and argues that the above rules only apply to gifts *inter vivos*

where the evidence of the gift rests in parol, and that where there is a writing which evidences the donor's intention, the courts will give effect to the delivery of the writing as a constructive delivery of the subject of the gift. This, however, in my opinion, is not the law. The writing must be such as to transfer the right of possession. There may be a symbolic delivery, or there may be a constructive delivery, but whether it be symbolic or constructive, it must be such a delivery as divests the donor with title, dominion and right of possession, and it must be the best delivery that can be made under the circumstances of the case, having due regard to the character of the property. The respondents rely upon two cases decided by this court. (*McGavic* v. *Cossum*, 72 App. Div. 35; *Matter of Mills*, 172 id. 530; affd., 219 N. Y. 642.) In the first case the subject of the gift was two $1,000 United States government bonds known as " 4 per cent Registered." These bonds were in the custody, for safekeeping, of the bank in Peekskill, N. Y., through whom she purchased them. She being seriously ill at her residence gave to the plaintiff the original memorandum of purchase of the bonds delivered to her by the bank, and across the back of which she indorsed the following: " Poughkeepsie, November 23, 1901. I have this day given my niece, Fannie H. McGavic, bond 2000 Reg. 4 per cent," and signed her name. The donor died shortly thereafter and it was held that " Actual delivery, by reason of the illness of the owner of the bonds, and their possession at that time by the bank, was physically impossible, but there was present, as evidenced by the writing of the deceased, not only the intention to *then* give, but also the intention to *then* deliver the thing given. The owner did all she could do in this respect. It was a good constructive or symbolical delivery, and this, under the circumstances, was sufficient to vest good title in the plaintiff."

In the instant case there was no physical or other impossibility to the actual delivery of the stock; it stood in the name of the company; but the stock to the extent of 7,213 shares was the property of the testator and it had been so held merely as a matter of business convenience of the old copartnership and at the time was so held, pending the formation of a new copartnership, when it might be desirable to hold all the

certificates of the stock *in solido* for the same business advantages. This latter consideration, in my opinion, was the controlling cause of the failure to make an immediate delivery of the stock, and the reason why the testator retained possession, dominion and control of the certificates. In *Matter of Mills* (*supra*) the testator was in California, the stock was in the possession of his son in New York, and this court said the stock which was the subject of the gift was " in possession of one of the donees, and no further act of Mr. Mills could make his possession more complete." And as to the daughter, we held that the delivery of the stock to the son for and on behalf of the daughter was a good delivery.

I have been unable to find that the courts in this jurisdiction have held, heretofore, that it is only where a parol gift is sought to be established that delivery is essential, and that where the intention to give is evidenced by a writing delivery is not necessary. Among the cases cited in the prevailing opinion as tending to sustain the proposition that the requirement for delivery of the thing given is limited to oral gifts, will be found cases where gifts evidenced by a writing have been declared invalid. It will also be found that many of those cases relate to gifts *causa mortis* and not to gifts *inter vivos*. So far as this State is concerned, it is in my opinion settled: " Delivery by the donor, either actual or constructive, operating to divest the donor of possession of and dominion over the thing, is a constant and essential factor in every transaction which takes effect as a completed gift. Anything short of this strips it of the quality of completeness which distinguishes an intention to give, which alone amounts to nothing, from the consummated act, which changes the title. The intention to give is often established by most satisfactory evidence, although the gift fails. Instruments may be ever so formally executed by the donor, purporting to transfer title to the donee, or there may be the most explicit declaration of an intention to give, or of an actual present gift, yet unless there is delivery the intention is defeated." (*Beaver* v. *Beaver, supra.*)

The writing given to Mrs. Cohn did not purport to assign, transfer or set over to her the stock. It was not a deed or instrument of gift that divested the testator of possession over

and dominion of the stock. That it was not intended that it should do so is clearly shown by the subsequent acts of the testator.

In my opinion the decree should be modified by declaring the attempted gift void and sustaining the objections to the account to that extent and the executors and trustees be surcharged with the proceeds of the said 500 shares of stock, and that the same forms a part of the principal of the trust estate.

DOWLING, J., concurred.

Decree affirmed, with costs and disbursements to respondents executrix and trustees, and disbursements of special guardian, respondent.