## In the Matter of the Estate of WASHINGTON S. VALENTINE, Deceased.

Surrogate's Court, New York County, February, 1924.

**Executors and administrators — accounting — interpretation of written instrument — gift of stock inter vivos by written instrument good although certificates were not delivered and donor was to receive dividends — intent that gift take effect at death of donor does not require written instrument to be in testamentary form.**

The terms of a written instrument drawn by a layman should receive a liberal construction.

An absolute gift under a written instrument clear and decisive in its terms cannot be cut down by a subsequent provision inconsistent with or repugnant to the prior words of gift.

The testator about five years before his death executed an instrument in writing, drawn by a layman, by which, without reserving a power of revocation, he did sell, assign and transfer to his wife 5,000 shares of the stock of a certain mining company and 2,500 shares of the stock of another mining company, and by the terms of the instrument delivery of the stock was not to become effective or operative until at and from the time of the death of the testator, who repeated his intention to make such transfer by stating in the said written instrument, " I have credited said stock in my private cash book," and by declaring in the final sentence, " I am indebted to my wife for the said shares." On the same day that he executed said instrument he likewise executed and delivered similar assignments to his daughters covering 5,000 shares of stock of the first company named in the assignment to his wife. The stock certificates were never delivered to either of the transferees, nor were certificates ever issued in their names. *Held*, that the transaction constituted a valid transfer of the stock which was not rendered nugatory because delivery thereof was not to become effective or operative until at and from the time of the death of the testator, the delivery of the instruments being sufficient without actual delivery of the stock.

The mere fact that the gift was intended to take effect in the enjoyment at death did not require the transfer to be testamentary in form.

The mere retention of the income by the donor not being inconsistent with the absolute transfer of the title to the stock, the assignments to the wife and daughters were sustainable as gifts *inter vivos*, and as in the alternative the proof also established all the elements of a valid and complete trust, the transfers might be sustained on either theory.

The referee appointed in a contested proceeding for the settlement of the accounts of the executors found as conclusions of law that said assignments to the wife and daughters of testator were testamentary in character; that they were not executed in accordance with the Statute of Wills and were, therefore, void. *Held*, that the referee's conclusions were erroneous and exceptions filed to his report, in those respects, will be sustained.

The referee's findings of fact and conclusions of law that a claim of testator's wife based on a loan to him being amply sustained by the evidence, exceptions to the referee's report in that particular will be overruled and as so modified the report will be confirmed.

Misc. 486|    Surrogate's Court, New York County, February, 1924.

Proceedings to settle accounts of executors.

*Samuel Ecker,* for executors.

*Alfred J. Wolff,* for Edna V. Custer and Juanita J. Valentine.

*Brown, Cooksey & Hines,* for Fernando B. Valentine.

*Gordon, Tally & Gordon,* for Irving Gordon, as special guardian for Maria Christina de Calleja and others, infants.

*Bernard H. Arnold,* special guardian for Jacqueline Josephine Valentine.

*Maurice Hotchner,* for Paula Valentine de Callejas.

*Harry I. Huber,* for executors of last will and testament of Joseph M. De Hart, deceased.

*Wise, Whitney & Parker,* for Myra B. Valentine.

*Leo Bernard Levy,* for Wm. Paul Beechler.

*Cook, Nathan & Lehman,* for Bertha A. Valentine.

Foley, S. In this contested accounting proceeding exceptions have been filed to the referee's report in two respects only. (1) The first question involves the validity of the transfer of certain stock made by the decedent in 1915 to his wife and two daughters. The referee has found that the instruments evidencing these transfers were testamentary in character, that they were not executed in accordance with the formalities required of a will, and were, therefore, void. In my opinion, however, his conclusions are erroneous and the exceptions must be sustained.

Washington S. Valentine, on November 26, 1915 (five years before his death), executed and delivered to his wife, Bertha A. Valentine, an instrument in writing in the following form: " In consideration of the sum of one dollar ($1.00) to me in hand paid, receipt of which is hereby acknowledged, and in consideration of the love and affection shown me by my wife, Bertha A. Valentine, I hereby sell, assign and transfer to my said wife, five thousand (5,000) shares of the common stock of the Sabana-Grande Honduras Mining Company and two thousand and five hundred (2,500) shares of the common stock of the New York & Honduras Rosario Mining Company. The delivery of the aforementioned stock shall not become effective or operative until at and from the time of my death. I have credited said five thousand (5,000) shares of the common stock of the Sabana-Grande Honduras Mining Company and the two thousand five hundred (2,500) shares of the common stock of the New York & Honduras Rosario Mining Com-

pany in my private cash book to my wife Bertha A. Valentine. Now, therefore, I declare that I am indebted to my wife for the said five thousand (5,000) shares of the common stock of the Sabana-Grande Honduras Mining Company and two thousand five hundred (2,500) shares of the common stock of the New York & Honduras Rosario Mining Company which are to be delivered to her and be a preferential claim on my estate before said estate be settled. In witness whereof, I have set my hand and seal this twenty-sixth day of November, 1915."

On the same day he likewise executed and delivered similar assignments to his daughters, Juanita J. Valentine and Edna V. Custer. These papers were similar in form, although the stock conveyed to them consisted only of 5,000 shares of the first company named in the assignment to the wife. The stock certificates were never delivered to any of the transferees and certificates were never issued in their names. At the same time Mr. Valentine made an entry in his cash book crediting the respective number of shares to the donees. I am of the opinion the transaction constituted a valid conveyance of the stock. It will be noted that the intent of the donor was to make a present gift. In the very first clause he said: " I hereby sell, assign and transfer " the shares. He repeats this intention by stating, " I have credited said stock in my private cash book," and in the final sentence he declares, " I am indebted to my wife for the said shares." No clearer declaration of his purpose could have been made by him. It is contended, however, that this absolute conveyance was rendered nugatory by the following sentence: " The delivery of the aforementioned stock shall not become effective or operative until at and from the time of my death." It is not disputed that the instrument was drawn by a layman, and for that reason its terms should receive a liberal construction. It is a familiar rule of construction that an absolute gift in clear and decisive terms cannot be cut down by a subsequent provision inconsistent or repugnant with the prior words of gift in the will or instrument. *Tillman* v. *Ogren*, 227 N. Y. 495; *Weber* v. *Kress*, 198 App. Div. 687. The fair construction of these words when read with the rest of the instrument is that he intended a present conveyance of title, but postponed enjoyment until the event fixed by him.

To constitute a valid gift, there must be on the part of the donor *first,* an intent to give, and *second*, a delivery of the thing given. *Matter of Van Alstyne*, 207 N. Y. 298; *Beaver* v. *Beaver*, 117 id. 421. Delivery may be evidenced either by the actual transfer of the property or by a symbolic delivery. In *Matter of Cohn*, 187 App. Div. 392, the donor delivered to his wife shortly before his

MATTER OF WASHINGTON S. VALENTINE. **489**

Misc. 486]    Surrogate's Court, New York County, February, 1924.

death a written instrument stating that he had given to her as a present 500 shares of the stock in a certain corporation. The Appellate Division held that the execution and delivery of the instrument of gift was a symbol which represented the donee's right of possession, that it was irrevocable and that the gift should be sustained. So in the instant case, the delivery of the instrument was sufficient without the actual delivery of the stock. Mr. Valentine's evident purpose was to transfer the title to these securities to his wife and daughters, reserving to himself the income and voting power during his life. If the paper had been drawn by an attorney in the more technical language of a deed of trust, it would have accomplished the same result, but the substance of the instruments would not have differed. The mere fact that a gift of this kind is intended to take effect in enjoyment at death does not require the conveyance to be testamentary in form. *Gilman* v. *McArdle*, 99 N. Y. 451; *Robb* v. *Washington & Jefferson College*, 185 id. 485; *Diefendorf* v. *Diefendorf*, 132 id. 100; *Ga Nun* v. *Palmer*, 216 id. 603; Davids' New York Law of Wills, 728. In *Gilman* v. *McArdle*, *supra*, Judge Rapallo says (p. *461): " It certainly must be in the power of a person to provide, either by will or contract, for matters of this description, and I can see no legal reason why he should be confined to a testamentary direction. It is only in respect to dispositions of property which are not to have any effect except upon the death of the owner and are revocable, that he is confined to a will. If they operate *in presenti*, they are valid as contracts, even though they are not to be carried into execution until after the death of the party making them, or may be contingent upon the survivorship of another." The state recognizes such gifts by taxing a transfer effectuated by a deed or grant made to take effect at death. Tax Law, § 220. The distinction between a will and an instrument taking effect at death is emphasized by Chief Judge Cullen in *Robb* v. *Washington & Jefferson College*, 185 N. Y. 485, 493, quoting as his authority Jarman on Wills (p. 17): "A will is an instrument by which a person makes a disposition of his property, to take effect after his decease, and which is in its own nature ambulatory and revocable during his life. It is this ambulatory quality which forms the characteristics of wills; for, though a disposition by deed may postpone the possession or enjoyment, or even the vesting, until the death of the disposing party, yet the postponement is, in such case, produced by the express terms, and does not result from the nature of the instrument." The facts in that case are not very different from those here. There the decedent conveyed all his property to a college, reserving to himself the income for life and directing that after his decease the property pass to the

college subject to the payment of certain charges. It was held that the deed was not testamentary in form and that it was valid and enforcible. In Mr. Valentine's case, no power of revocation was reserved, thereby distinguishing it from the revocable transfers in *Butler* v. *Sherwood*, 196 App. Div. 603; affd., 233 N. Y. 655. The mere retention of the income by the donor here was not inconsistent with the absolute transfer of title. Examples of similar transactions, where the gifts were sustained, may be found in *Matter of Hendricks*, 163 App. Div. 413; affd., 214 N. Y. 663, where the voting power and control of the stock was reserved. Again in *Matter of Bullard*, 76 App. Div. 207, the donor transferred to his grandson certificates of stock, but retained the control, dividends and voting power and held office for a long period of time by virtue of this stock control. In each case the gift was upheld. The evidence in the instant case also discloses that Mr. Valentine held numerous other shares of stock, which were concededly the property of his wife and daughters, that he pledged them for his individual loans and exercised general control over them. As stated in *Matter of Bullard, supra* (p. 209), " The acts of the donor can as well be predicated upon the voluntary sufferance of the donees as upon a prior contract." The transfers to the wife and daughters may, therefore, be sustained as a valid gift *inter vivos*. In the alternative, the proof also establishes all the elements of a valid and complete trust and the transfers may be sustained on either theory. *Orton* v. *Tannenbaum*, 194 App. Div. 214; *Hoffman House* v. *Foote*, 172 N. Y. 348; *Brown* v. *Spohr*, 180 id. 201.

The referee's conclusions of law twelfth, thirteenth and fourteenth are erroneous and the exceptions to them sustained.

(2) The second question involves the claim of $11,650 based upon a loan made by the wife to the decedent. The evidence amply sustains the findings of fact and conclusions of law of the referee and I am of the opinion that this is a valid obligation against the estate. The exceptions to the report in this particular are overruled.

Submit decree confirming the report of the referee as modified herein.

Decreed accordingly.