MICHAEL S. GRUEN, Appellant, v KEMIJA GRUEN, Respondent.

Second Department, December 3, 1984

### APPEARANCES OF COUNSEL

*Gruen, Muskin & Thau* (*Victor P. Muskin* of counsel), for appellant.

*Hall, Dickler, Lawler, Kent & Howley* (*Paul G. Whitby* and *Helen J. Williamson* of counsel), for respondent.

### OPINION OF THE COURT

GIBBONS, J.

In this action, *inter alia,* for an adjudication of title to a valuable oil painting, plaintiff asserts that the painting was given to him by his father as a birthday present in 1963. Defendant contends that there was no valid gift of the painting, and the Supreme Court, Kings County, has concluded, after a nonjury trial, that the defendant is correct. We disagree and hold that the plaintiff has sustained his burden of proving a valid *inter vivos* gift. Accordingly, the judgment appealed from

must be reversed and a judgment entered declaring the plaintiff's ownership of the painting.

The subject of this action is a painting entitled "Schloss Kammer am Attersee II", which was painted by Gustav Klimt, a noted Austrian modernist, around the turn of the century. It was purchased for $8,000 in 1959 by the plaintiff's father, Victor Gruen, who died in Austria on February 14, 1980. The defendant, Kemija Gruen, is the plaintiff's stepmother, having married the plaintiff's father in February of 1963. Victor Gruen was, until his death, a prominent and successful architect, with offices in several cities. In fact, at all times relevant to this lawsuit, he spent significant amounts of time both in New York and Los Angeles, working professionally in both cities and maintaining separate residences in each. The painting was purchased from an art gallery in New York and was delivered to the decedent's Manhattan apartment, where it remained until the summer of 1963. At that point, however, it was apparently shipped to the decedent's Los Angeles home, where it remained for some time. The painting was located in the decedent's residence in Vienna, Austria, at the time of his death.

On or about April 1, 1963, the plaintiff's father sent him a letter stating, in relevant part, as follows: "I am sending you enclosed a written confirmation of your most important birthday present. I hope that it will take a long time before you can enjoy it." Subsequently, on May 22, 1963, another letter was sent to the plaintiff by his father which stated the following:

"Dear Michael:

"I wrote you at the time of your birthday about the gift of the painting by Klimt.

"Now my lawyer tells me that because of the existing tax laws, it was wrong to mention in that letter that I want to use the painting as long as I live. Though I still want to use it, this should not appear in the letter. I am enclosing, therefore, a new letter and I ask you to send the old one back to me so that it can be destroyed.

"I know this is all very silly, but the lawyer and our accountant insist that they must have in their possession copies of a letter which will serve the purpose of making it possible for you, once I die, to get this picture without having to pay inheritance taxes on it.

"Love,

"s/Victor".

Enclosed with this letter was the following "replacement" letter bearing the date of April 1, 1963:

"Dear Michael:

"The 21st birthday, being an important event in life, should be celebrated accordingly, I therefore wish to give you as a present the oil painting by Gustav Klimt of Schloss Kammer which now hangs in the New York living room. You know that Lazette and I bought it some 5 or 6 years ago, and you always told us how much you liked it.

"Happy birthday, again.

"Love,

"s/Victor".

The preceding two letters were dictated by Victor Gruen on or about May 22, 1963, and were unquestionably signed by him. Notably, except for those brief periods of time when the painting was on loan for exhibition, it remained in the father's possession until his death.

Before going on to consider the substantive issues, we pause for a moment to comment briefly upon the choice of laws question which was given such extensive treatment by Trial Term. Fundamentally, we see no reason to disturb that court's decision to apply New York law to the facts of the instant case. We note, however, that with respect to the issue of whether a valid *inter vivos* gift has been made, there is no material difference between New York and California law. Thus, any alleged conflict is, insofar as is here relevant, illusory (cf. *Dym v Gordon,* 16 NY2d 120, 124).

The primary issue on this appeal is whether the afore-mentioned letters sent by Victor Gruen to his son in April and May of 1963 operated to effect a present transfer to the plaintiff of a property interest in the Klimt painting which is the subject of this lawsuit. In our view, this question should be answered in the affirmative.

At common law, a gift of property could be effected by the delivery of a writing to the donee evidencing a gift. Such a writing has been variously called an "instrument of gift" or a "deed of gift", but, by whatever name it is known, it is well settled in this State that an *inter vivos* gift of property may be validly made by written instrument (see *Speelman v Pascal,* 10 NY2d 313; *Gordon v Gordon,* 70 AD2d 86, 90, affd 52 NY2d 773; *Matter of Cohn,* 187 App Div 392, 395; *Hawkins v Union Trust Co.,* 187 App Div 472; *Matter of Roosevelt,* 190 Misc 341; *Matter of Valentine,* 122 Misc 486; *Matter of Stalden's Estate,* 194 NYS

349). When property is conveyed in this manner, it is the delivery of the instrument itself which fulfills the "delivery" requirement of a gift *inter vivos,* and duplicative manual delivery is therefore unnecessary. As the First Department stated in *Matter of Cohn* (*supra,* p 395), "[t]he necessity of delivery where gifts resting in parol are asserted against the estates of decedents is obvious; but it is equally plain that there is no such impelling necessity when the gift is established by the execution and delivery of an instrument of gift". The policy considerations underlying the foregoing distinction can be simply stated, for in the case of an oral gift, the fact of delivery serves to assist, in an evidentiary manner, to confirm the intent of the donor, and to prevent the assertion of fraudulent claims (see *Matter of Cohn, supra*). No such policy considerations are applicable to a gift made in writing, for, as one commentator has noted, "the delivery of a written conveyance * * * requires a high degree of deliberation on the part of the donor, substantially higher than a manual delivery, and affords the clearest and most convincing evidence of the fact that a gift has taken place" (Mechem, The Requirement of Delivery in Gifts of Chattels, 21 Ill L Rev 568, 586). Moreover, while certain types of property, being intangible in nature, can only be "delivered" by means of a written instrument (see, e.g., *Speelman v Pascal, supra*), the principle itself does not appear to be so limited, and may be applied, with equal vigor, to conveyances of tangible personal property as well (see, e.g., *Hawkins v Union Trust Co., supra; Matter of Roosevelt, supra; Matter of Stalden's Estate, supra*).

Closely allied with the "delivery" requirement of a gift *inter vivos* is the concept of "donative intent", which requires that the donor, at the operative time, intend to make a present transfer of ownership to the donee (*Matter of Szabo,* 10 NY2d 94). The mere intention to make a gift *in futuro* is not sufficient (see *Gannon v McGuire,* 160 NY 476, 481; see, also, 25 NY Jur, Gifts, § 14). Moreover, a gift that is not intended to take effect until the death of the donor is said to be testamentary in nature, and will be denied effect unless the stringent requirements of the statute of wills have been complied with (see *McCarthy v Pieret,* 281 NY 407, 409, mot for rearg den 282 NY 800). However, a donor may still make a valid gift of property with the right of enjoyment postponed until after his death, provided only that his intention is to presently transfer an enforceable interest in that property to the donee (*McCarthy v Pieret, supra,* pp 410-411).

The final requirement of a valid gift, to wit, acceptance, will be discussed *infra.*

Where, as here, a gift is alleged to have been made by way of a written instrument, the donor's intent will presumably be discernible from the face of the document itself, and if the intent to effect a present transfer of ownership is clearly and unambiguously expressed therein, then the delivery of that instrument to the donee will be all that is required of the donor in order to effect a valid transfer. With this in mind, we turn to a consideration of the evidence before Trial Term.

Upon careful consideration of the writings in evidence before Trial Term, we have come to the conclusion that there may be gleaned therefrom an unambiguous intention on the part of the elder Gruen to effect a present gift of the painting to his son, subject only to his reservation of a life estate therein. Thus, while the second letter dated April 1, 1963 appears to express an unequivocal intent on the part of the donor to convey unconditional ownership of the painting to the plaintiff, the covering letter with which it was sent makes clear the donor's intention to retain the use of the painting for the remainder of his lifetime. Moreover, by making explicit reference to the original letter (which was presumably destroyed in accordance with the donor's wishes), the covering letter makes clear that the desire "to use the painting [for] as long as [he shall] live" was part of the donor's intention from the onset. In short, it is evident upon a reading of these letters that the intent of the plaintiff's father, both on April 1, 1963 and on May 22, 1963, was to effect a present transfer of a remainder interest in the painting to his son, and to reserve unto himself a life estate therein, i.e., the "use" of the painting for "as long as [he should] live". It therefore makes little difference for present purposes which of the two letters (the original April 1 letter or the May 22 letter and its enclosure) is regarded as the operative letter of gift, for a gift, once completed, is irrevocable (see *Gannon v McGuire*, 160 NY 476, *supra; Matter of Cohn*, 187 App Div 392, *supra*), and the contents of the original April 1 letter have been adequately proved. Moreover, under ordinary rules of construction, the two letters mailed on or about May 22, 1963, having been drafted contemporaneously and referring to the same subject matter, are to be read together in discerning their intent (see *Baird v Erie R.R. Co.*, 210 NY 225, 233).

In finding for the defendant, Trial Term appears to have determined that the decedent's intent in sending the aforementioned letters need not be precisely determined, for regardless of whether they were intended to operate as a promise to bequeath the painting to the plaintiff or to effect a present transfer of title while reserving a life estate, the attempted

transfer was invalid. In the exercise of our discretionary authority in a nonjury case to "weigh the relative probative force of conflicting testimony and [the] inferences [to be drawn therefrom, and] * * * to grant the judgment which, upon the evidence, should have been granted" (*Brooks v New York State Thruway Auth.,* 73 AD2d 767, 768, affd 51 NY2d 892; *Yalkowsky v Yalkowsky,* 91 AD2d 610, affd 61 NY2d 767), we find, as a fact, that the donor's intention in writing these letters was to make a present gift of the painting to his son, Michael, while reserving unto himself a life estate. Moreover, since we cannot accept Trial Term's penultimate conclusion that the foregoing is invalid under New York law, we are obliged to reject its further conclusion that the gift must fail.

In *Matter of Brandreth* (169 NY 437), the Court of Appeals was asked to determine the taxability, under New York law, of an *inter vivos* transfer of stock in which the donor had reserved unto himself the right to receive income and to vote the stock during his lifetime. In concluding, *inter alia,* that the transaction was taxable under subdivision 3 of section 220 of the Tax Law as a "transfer * * * intended to take effect in possession or enjoyment at or after [the] death" of the grantor (*Matter of Brandreth, supra,* p 441), the court found, as a fact, that the donor had thereby made a valid present gift of a remainder interest in the stock, stating, "[i]n this state a life estate and remainder can be created in a chattel or a fund the same as in real property" (*Matter of Brandreth, supra,* pp 441-442; see *Matter of Valentine,* 122 Misc 486, *supra;* see, also, *Matter of Sussman's Estate,* 125 NYS2d 584, 589, affd 283 App Div 1051). The foregoing still appears to represent the prevailing state of New York law on the subject.

Trial Term's reliance in reaching a contrary conclusion upon the contradictory language in *Young v Young* (80 NY 422, 436) is, in our view, misplaced, for, while the language referred to by Trial Term does indeed suggest that a donor may not make a valid present gift of a chattel while reserving a life estate therein, this language is itself dictum. In *Young v Young (supra),* the principal issue before the court was whether an attempted gift of corporate bonds with a reserved life estate in the interest had failed because of inadequate delivery. Since the attempted gift was found to be oral, the court concluded that manual tradition of the bonds was necessary in order to effectuate the transfer. Lacking this, the attempted gift was held to have failed. It is noteworthy, however, that earlier in its opinion the court had stated that had the same "gift" been made by way of delivered written instrument, it might nevertheless have

been held valid (*Young v Young, supra,* p 430), and that later in its opinion the court specifically declined to pass upon the question of "whether a remainder in a chattel may be created and given by a donor by carving out a life estate for himself and transferring the remainder" (*Young v Young, supra,* p 440). Indeed, a forceful indication that the cited portion of the *Young* opinion is dictum is the fact that the Court of Appeals has itself declined to follow it, e.g., in *Matter of Brandreth (supra),* where a gift of stock with a reserved life estate was given the court's explicit sanction (cf. *Speelman v Pascal,* 10 NY2d 313, 320, *supra*). Nor does *Matter of Ramsey's Estate* (98 NYS2d 918) stand for the proposition that the gift of a chattel with a reserved life estate is a nullity under New York law, for, in holding, *inter alia,* that personalty, unlike realty, could not be conveyed subject to a lifetime reservation, the Surrogate in that case relied upon the same dictum in *Young v Young (supra),* which was cited with approval by Trial Term in this case, and made no mention whatsoever of *Matter of Brandreth (supra)* or any of the other New York cases in which the validity of such conveyances has been upheld (see, e.g., *Matter of Valentine, supra*). In fact, the holding in *Matter of Ramsey's Estate (supra)* has not been followed in any reported decision in this State and can only be regarded as an anomaly.

Similarly unavailing is Trial Term's attempt to distinguish the cases, such as *Matter of Brandreth (supra),* which recognize the validity of a gift of personalty with a reserved life estate, on the ground, *inter alia,* that the property therein consisted of intangibles, such as shares of stocks, whereas the subject matter of the instant gift was a tangible object, to wit, a painting. This proposed distinction is, in our view, without a difference. To begin with, the language in *Matter of Brandreth (supra)* is not limited in its application to gifts of intangibles. Moreover, considerations regarding the tangibility of the property which is the subject of a purported gift appear more properly addressed to the issue of effectuating proper delivery (see, e.g., *Speelman v Pascal, supra*) rather than the question of whether the reservation of a life estate would be proper. Finally, *Young v Young (supra),* upon which Trial Term purports to rely, specifically concerned a gift of bonds, which appear no more tangible for present purposes than the certificates of stock which were involved in *Matter of Brandreth (supra)* (see General Construction Law, § 39; *Speelman v Pascal, supra,* p 319).

While the donative intent of the elder Gruen is, in our view, clearly discernible from the language of the letters themselves,

were we to assume, *arguendo,* that they are somehow ambiguous, the result would be the same, as the other evidence in this case only serves to buttress our present conclusion that the donor's intention was to presently transfer a remainder interest in the painting to his son. The very delivery of the gift letters is, in the first instance, strong evidence of a present donative intent, since the subject matter of the instant gift, a remainder interest, has no physical existence and is embodied solely in the written instruments. Accordingly, the delivery of those instruments to the donee, wholly removing them from the dominion and control of the donor, constitutes strong evidence of an intention that the transaction take on the irrevocable character of an *inter vivos* conveyance. In addition, the decedent had, on numerous occasions subsequent to the delivery of the gift letters, declared both orally and in writing that he had given the painting to his son. By way of contrast, the fact that the decedent continued to exercise a great degree of control over the painting during the remainder of his lifetime is wholly consistent with his reserved life estate, and is not therefore probative of any alleged lack of donative intent.

Viewed from this perspective, we also cannot ascribe much weight to the fact that the decedent stated, on an application for a license to export the painting from Austria, that he had bequeathed the painting to his heirs in his will, since the only relevance that this document could have had to the issues before the court would be as an indication of the donor's intent at the time that the gift letters were sent.[1] Although the statement in that document is admittedly inconsistent with the notion of a completed gift, it must be noted that this statement was made more than 16 years after the gift letters had been delivered to his son. This remoteness in time, in conjunction with the several more contemporaneous declarations by the decedent that a gift of the painting had been made, suggest to us that the statement on the license application is of questionable relevance with respect to the issue of the donor's intentions in 1963. Moreover, there is no indication in the record that the decedent had bequeathed the painting in his will. In fact, in a letter to his accountant regarding revisions to his will, the decedent expressly declared that the Klimt painting had already been given

---

1. On the instant appeal, plaintiff raises several alleged errors regarding Trial Term's evidentiary rulings. He asserts, for example, that certain documents, this license application among them, were improperly admitted, while others were improperly excluded. However, since our decision here today is in plaintiff's favor, we find it unnecessary to pass upon the merits of these rulings, and accept the rulings for the purposes of discussion only.

to his son. Finally, while the statement in the application could conceivably be read as implying that the donor had changed his mind about the painting, the foregoing could not affect the validity of the completed gift (cf. *Matter of Cohn,* 187 App Div 392, *supra*).

In concluding that the plaintiff had failed to establish the requisite donative intent, Trial Term also regarded as highly significant the donor's failure to file a gift tax return with respect to the painting. However, we find this factor to be of marginal significance, especially in view of the fact that an explanation was offered at trial by the donor's accountant, i.e., that it was felt that the painting would qualify as a tax exempt gift. The fact that the painting was purchased for $2,000 more than the then-applicable gift tax exclusion was apparently regarded as *de minimis* by the accountant, and while the foregoing may cast doubt upon the accountant's professional judgment, it does not shed much light upon the decedent's donative intent. In fact, since the whole purpose of this gift transaction was the avoidance of estate taxes on the painting, inferring a lack of donative intent from the failure to file a gift tax return would appear to be highly unwarranted.

Turning finally to the requirement of "acceptance", it is well established under New York law that acceptance of a gift by the donee is a *sine qua non* of a completed transfer (*Matter of Szabo,* 10 NY2d 94, *supra*), and that the fact that a gift is beneficial to the donee will give rise to the presumption of an acceptance on his part (*Beaver v Beaver,* 117 NY 421, 429). *Matter of Kelly* (285 NY 139), cited by Trial Term for the proposition that the presumption of an acceptance may be destroyed by evidence of a renunciation or acts inconsistent with an acceptance, is inapposite, as the donee in that case refused to accept delivery of the gift, a ring, while notifying the donor that it was "too flashy" (*Matter of Kelly, supra,* p 148). Thus, delivery of the gift was never accomplished. In the instant case, however, delivery was effectuated via delivery of the gift letters, and there is no substantive evidence that the donee ever rejected or repudiated these instruments. The fact that the plaintiff retained these letters within his exclusive dominion and control during the life of the donor is, in fact, clear and convincing evidence to the contrary. Moreover, the fact of an acceptance is supported by testimonial evidence appearing on the record, including the subsequent declarations of the donor himself.

In this regard, we cannot ascribe to Trial Term's conclusion that plaintiff's failure to include his interest in the painting in financial affidavits which he submitted in connection with his

matrimonial action is "damning evidence" of nonacceptance. In fact, assuming, *arguendo,* the admissibility of this evidence,[2] we fail to see how it can reasonably be given such weight. The affidavits in question were executed in 1973, some 10 years after the gift letters were delivered. In the light of this, and in light of the prior evidence of an acceptance, the failure to include his remainder interest in the painting in his financial affidavits in the matrimonial action does not reasonably support the inference that plaintiff never accepted the gift. Its omission from the marital affidavits clearly admits of other, more reasonable inferences than that the gift had been rejected 10 years earlier when it was proffered.

In sum, we conclude that the plaintiff has successfully shouldered the heavy burden placed upon those who attempt to prove the existence of a valid *inter vivos* gift as against the estate of a decedent, i.e., by clear and convincing evidence (see *Matter of Abramowitz,* 38 AD2d 387, 389, affd 32 NY2d 654; see, also, *Matter of Kelly,* 285 NY 139, 150, *supra*). Accordingly, the judgment must be reversed.

In light of our determination, the further appeal from the order denying plaintiff's CPLR 4404 motion to set aside the judgment should be dismissed as academic.

LAZER, J. P., THOMPSON and BOYERS, JJ., concur.

Judgment of the Supreme Court, Kings County, dated May 6, 1983, reversed, on the law and the facts, and judgment granted in favor of the plaintiff declaring that he is the owner of the subject painting.

Appeal from the order of the same court, dated June 30, 1983, dismissed as academic in light of our determination on the appeal from the judgment.

Plaintiff is awarded one bill of costs.

---

2.  See page 178, footnote 1.