OPINION OF THE COURT
John M. Thomas, S.
The account of Alberta Pearson and James Taylor, as executors of the estate of Annie Mae Curry, also known as Anna Mae Curry, was filed in this court on August 28, 1988.
*253 Objections to the account were filed by Elijah Curry as surviving spouse of the decedent on November 7,1988.
The first objection claims the right to setoif of the automobile owned by the decedent pursuant to EPTL 5-3.1 (a) (4) which schedule E of the petitioners’ account shows as being given to Edward Taylor during the lifetime of the decedent.
The second objection claims that the account fails to show a setoif to the surviving spouse of $1,000 as required by EPTL 5-3.1 (a) (5).
The third and final objection objects to the recital of schedule G that Mr. Curry’s right of election has been satisfied by his acquisition of the title to real property owned by himself and the decedent as tenants by the entirety.
The decedent died on May 8, 1987 leaving a last will and testament admitted to probate by this court on November 9, 1987, under the terms of which Mrs. Curry bequeathed her personal clothing and jewelry to her sister, Alberta Pearson, and her brother, James Taylor; bequeathed her automobile to her brother, Edward Taylor, and left the residuary of her estate fractionally divided between a friend and her five brothers and sisters, without making any provision for her husband, Elijah Curry, the objectant herein.
Elijah Curry has timely filed in this court a surviving spouse’s notice of election pursuant to EPTL 5-1.1.
Prior to a trial of the issues before the court the second objection was disposed of by the petitioners’ admission that there was no defense to a setoif of $1,000 to Mr. Curry.
Turning first to the question of the decedent’s automobile, the evidence discloses that the car, a 1983 Buick, was purchased by Mrs. Curry from her own funds; that the car was very important to her, and was kept in a meticulous condition. She permitted no one to drive the car except herself. When Mrs. Curry learned that she was terminally ill, her brother testifies that since she wanted no one else to drive her car she gave the car to him, reserving the right to drive it until she died. The manner in which the transfer was effected was the decedent signed the back of the certificate of title and delivered it to her brother, Edward Taylor. The car remained in the possession of the decedent. The brother testified that he did not know how to drive and did not have a license. After Mrs. Curry’s death, Edward took the car to the car dealer from which the automobile was purchased and sold it to the dealer for $7,800 on June 10, 1987. The manager of the used *254 car department testified that he could not remember whether the back of the certificate was completed, but he believed not, and that the only thing that appeared was Mrs. Curry’s signature, which he recognized from past dealings.
If there has been a valid inter vivos gift as the executors’ claim and, therefore, the car was not in existence at the time of the decedent’s death, then there can be no setoff to the surviving spouse. (See, EPTL 5-3.1 [b].) Likewise, if there has been a valid causa mortis gift, there can be no setoff, but the car does become a testamentary substitute pursuant to EPTL 5-1.1 (b) (1) (A). The third alternative and the one taken by the objectant is that if the gift is illusory and the decedent remained the owner of the automobile at the time of her death, then the total value of the car is set off to the objectant and forms no part of the estate. The objectant’s contention that the gift was illusory is based on the failure to transfer the vehicle, pursuant to the provision of section 2113 of the Vehicle and Traffic Law. That statute provides, inter alia, that the transferee shall, within 30 days after the transfer to him of the vehicle, execute the application for a new certificate of title and cause a certificate and application to be mailed or delivered to the Commissioner of Motor Vehicles. More importantly, section 2113 (c) provides that except in the case of dealers, a transfer by an owner is not perfected so as to be valid against third parties generally until the provisions of this section are complied with. The cases interpreting the section and upon which the objectant relies are cases in which the third parties were creditors or bona fide purchasers for value. (See, Sheridan Suzuki v Caruso Auto Sales, 110 Misc 2d 823; Bova v De Lucas, 119 Misc 2d 785.) Thus far the courts of this State have not passed upon the question in which the "third party” under the section is a surviving spouse claiming a right of setoff under EPTL 5-3.1. A careful analysis of the entire Certificate of Title Act (Vehicle and Traffic Law § 2101 et seq.) convinces this court that the fact that the donee of the automobile failed to conform to the requirements of section 2113 and that upon the books of the Commissioner of Motor Vehicles the title certificate at the time of Mrs. Curry’s death remained in her name, does not preclude the issue of true ownership to be questioned. Section 2108 of the Act, at subdivision (c), provides that certificate of title is only prima facie evidence of the facts appearing on it. In the case of Matter of Punis v Perales (112 AD2d 236) the court reversed the findings of a State Commissioner who denied public assistance to a *255 petitioner on the basis that she owned an automobile because the registration, insurance and title were in her name. The testimony showed that petitioner’s father bought the car for her sister, made all the payments, maintained the car, but titled it in the petitioner’s name for insurance purposes. The court, in its decision, held that title under the certificate of title registered with the Commissioner of Motor Vehicles is not conclusive proof of ownership. (Citing Fulater v Palmer’s Granite Garage, 90 AD2d 685; Young v Seckler, 74 AD2d 155; Fitzpatrick v Bank of N. Y., 124 Misc 2d 732; Matter of Terranova v State of New York, 111 Misc 2d 1089.) Even the statute in question is not absolute in its provisions, stating "a transfer by an owner is not perfected so as to be valid against third parties generally until the provisions of this section * * * have been complied with”, rather than saying all third parties or by eliminating the word "generally” so that it reads against third parties, mandating a more all encompassing interpretation (Vehicle and Traffic Law § 2113 [c]). Additionally, it should be noted that this is not the case of a creditor or a bona fide purchaser for value who have invested funds in particular reliance upon the strength of the title. The heavy burden required of one who seeks to sustain a gift against a decedent’s estate under common law is sufficient protection for a surviving spouse or members of a decedent’s family who are seeking the benefits of a setoff under EPTL 5-3.1. Therefore, it is the court’s determination that the question of the validity of the gift from Anna Curry to her brother, Edward, turns not on the issue of section 2113 of the Vehicle and Traffic Law, but on the common law of gifts.
In order to properly apply the standards necessary to determine the validity of a gift it is important to first conclude whether the gift is a causa mortis gift or an inter vivos gift. A gift causa mortis must contain all of the essential elements of a valid inter vivos gift and, in addition, the gift must have been made in contemplation of the donor’s impending death and the donor must have died from the existing ailment or peril without revocation of the gift. (Champney v Blanchard, 39 NY 111; Grymes v Hone, 49 NY 17; Bedell v Carll, 33 NY 581.) The unrefuted testimony shows that the motivating factor which prompted the gift on the part of the decedent was her knowledge that she was terminally ill. She never recovered and died approximately a year after the gift and it is readily apparent that Mrs. Curry never revoked the transfer of the automobile to her brother, Edward. Thusly, this was *256 a causa mortis gift and must now withstand the test of donative intent, delivery and acceptance by the transferee.
The donative intent in this case is clearly shown by the evidence on the reason for the gift of the impending death of the donor and is manifested in the fact that she signed the back of the certificate of title thus doing everything that she thought necessary to affectuate the transfer and then giving the title to her brother, the transferee. This fact is corroborated by the deliverance of the title to the automobile dealer and the verification by the car dealer that the decedent had in fact signed the certificate of title on the reverse side.
Delivery can be accomplished by means of a written instrument and this not only applies to intangible property but, additionally, tangible personal property. (See, Hawkins v Union Trust Co., 187 App Div 472; Matter of Roosevelt, 190 Misc 341; In re Stalden’s Estate, 194 NYS 349.) Again the signing and delivery of the title certificate is symbolic delivery of the ownership of the automobile. The fact that possession of the vehicle was not given to Edward Taylor at the time of the gift is not sufficient to defeat the gift. (See, Gruen v Gruen, 104 AD2d 171, affd 68 NY2d 48 [in which the inter vivos gift of a painting was held valid even though there was no change of possession based upon strong evidence that the donor retained the life use, but gave the remainder interest].)
Acceptance by a donee is essential to the validity of an inter vivos or causa mortis gift, but when a gift is of value to the donee as it is here, the law will presume an acceptance on his part. (Matter of Kelsey, 26 NY2d 792, affg 29 AD2d 450; Beaver v Beaver, 117 NY 421; Gruen v Gruen, supra.) Additionally, the transferee demonstrated acceptance by taking the vehicle after the death of the decedent and selling the same to his benefit. Thusly, the court construes the gift to Edward Taylor by Annie Mae Curry as a valid causa mortis gift thereby qualifying as a testamentary substitute under EPTL 5-1.1.
The issue of the real property which was held by the decedent and her surviving spouse as tenants by the entirety is an issue of contribution of each party to determine the amount if any that will be allocated as a testamentary substitute in the calculation of the surviving spouse’s right of election under EPTL 5-1.1. For a transaction to be a testamentary substitute, the will in question must have been executed subsequent to August 31, 1966, the transaction must have occurred after that date and during the marriage. If all of *257 these circumstances have not occurred, then the transaction is exempt and not a testamentary substitute (Matter of Filfiley, 69 Misc 2d 372.) The decedent’s will is dated December 15, 1986. The property in question was first purchased by Elijah Curry individually under a land contract dated January 27, 1960. Final payment, however, was not made pursuant to the contract until August 31, 1979, at which time the title was transferred to Mr. Curry and the decedent, Anna Mae Curry, as tenants by the entirety. Mr. and Mrs. Curry were married on September 4, 1953 and continued in that state until Mrs. Curry’s death on May 8, 1987. Thusly, the criteria for a testamentary substitute has been met and it remains for the court to determine the contribution to the property made by each spouse. If what is passing to the surviving spouse is merely a return of such spouse’s contribution to the original consideration for the property and not by reason of the decedent’s death, then such testamentary provision must be reduced by the amount of the surviving spouse’s contributions (EPTL 5-1.1 [b] [3]). The testimony discloses that at the time of the execution of the land contract to Elijah Curry on the 27th day of January 1960, the down payment for the contract was obtained by Mr. Curry from a sale of other property which he owned individually and that Mrs. Curry refused to sign the land contract as she did not want to be obligated under its terms. Mr. Curry claims that he made all payments under the terms of the contract from his income of approximately $1,600 a month. In 1979 he received a lump sum from a settlement of an accident which occurred on March 29, 1975. From these funds the balance of the contract was paid and the deed was issued from Anna M. Heath, the contract vendor, to Mr. and Mrs. Curry as tenants by the entirety. Although there was testimony on behalf of the decedent’s estate that Mr. Curry never was employed after his accident and that Mrs. Curry made payments regarding taxes and utilities for the residence, there was no proof submitted to refute the testimony of the surviving spouse that the decedent never contributed to the actual consideration of the property. It is only the capital investment in the purchase of the asset that is relevant to the determination of the respective contributions of the spouses in order to calculate the testamentary substitute and the elective share. Since, therefore, the value of the property that passed to Elijah Curry was merely the return of his own contribution and investment, its value of $29,500 cannot be offset against his right of election.
*258 The proper determination of the right of election was clearly delineated by Surrogate Sobel in Matter of Schlosser (73 Misc 2d 380). The net testamentary estate is first determined. To that sum must be added the total of all nonexempt testamentary substitutes. Those benefiting the spouse and those benefiting others. On the basis of that total amount, the gross elective share, whether one half or one third, is determined. In determining the net elective share, the testamentary substitutes for the benefit of the spouse is treated as testamentary disposition to the spouse contained in the will (EPTL 5-1.1 [c] [1] [C]), and is deducted from the gross elective share to become the net elective share. The exempt property which passes to the surviving spouse pursuant to EPTL 5-3.1 does so independently of any testamentary estate and cannot be considered in computing the surviving spouse’s statutory share when a right of election is exercised. (See, Matter of Friedrichs, 45 Misc 2d 800; Matter of Giddings, 198 Misc 536; Matter of Curley, 151 Misc 664, mod on other grounds 245 App Div 255, affd 269 NY 548; Matter of Jackson, 177 Misc 480.)
Applying these principals of law to the account currently before the court, we find that the total testamentary assets, excluding the car, amounts to $12,373. Reducing that amount by the $1,000 cash setoff provided for in EPTL 5-3.1 and stipulated to between counsel, leaves a gross testamentary estate of $11,373.05. Reducing that amount by the funeral, administration expenses and the debts totaling $3,533.37, leaves a net estate of $7,839.68. Adding the testamentary substitute of the motor vehicle in the amount of $7,800 to the net estate arrives at a balance of $15,639.68. Since there are no testamentary substitutes which benefit the surviving spouse and the decedent died without issue, the surviving spouse’s share under EPTL 5-1.1 constitutes one half of $15,639.68, or $7,819.84. The set-off property of $1,000 added to the elective share brings the total amount due Elijah Curry in this matter to $8,819.84.
For the proper assessment of the elective share against the beneficiaries of the estate, the $1,000 cash setoff is first paid from the estate. The elective share of $7,819.84 is then ratably assessed to the remaining beneficiaries of the decedent’s will and the recipient of the proceeds of the motor vehicle in proportion to their fractional interest in the total of the estate and the testamentary substitute.