MARJORIE F. WARNER and Others, as Administrators, etc., of TERRY M. WARNER, Deceased, as the Representatives and Successors in Interest of the Said TERRY M. WARNER, Appellants, *v.* GERALD G. WARNER and Others, Respondents.

Second Department, December 16, 1921.

**Trusts — action to impress trust on real property — property held by father under agreement to convey to son on payment of certain sum — repudiation of contract by father — wrongful entry into possession by father — amount paid by son to father credited to amount due where no other debt shown — evidence of son as to what payments were for and his reason for leaving farm excluded under Code of Civil Procedure, § 829 — improvements made by father not chargeable to son — accounting for fair rental value during father's occupancy — profits made in operation of farm by father need not be accounted for.**

Prior to the marriage of a son, his father agreed that he would advance him $3,000, a like amount to be advanced by the father of the son's prospective wife. In the execution of that arrangement the son's prospective father-in-law conveyed to the father a farm of the agreed value of $13,000 for the sum of $10,000, which the father agreed to convey to the son on the payment of $7,000, holding the same as security in the meantime. The father repudiated the contract and, after the son left the farm, entered into possession and made valuable improvements thereon and received the rents and profits therefrom.

In an action after the death of the father to impress a trust on the farm in favor of the son and for an accounting of rents and profits, *held,* that the money which it was shown on the trial had been paid to the father by the son, after the title to the farm had been conveyed to the father, should be credited on the amount due from the son, for, though it was not shown what was the purpose of those payments, it did appear that the son owed the father no other debt, and, therefore, the plaintiff is entitled to the fair inference that the payments were made on account of the farm.

Plaintiff's attempts to show what the payments were for and the cause of his leaving the farm were properly excluded on defendants' objections under section 829 of the Code of Civil Procedure.

The father having repudiated his contract and entered into possession of the farm wrongfully after the son had moved away, the cost of the improvements made on the farm by the father during his possession cannot be charged to the son, for if a wrongdoer who deliberately possesses himself of the property of another, repudiating his obligations, sees fit

to expend money in permanent improvements thereon, he forfeits the money so expended.

Furthermore, the son is entitled to an accounting for the fair rental value of the farm during the father's possession and the sum so found due should be set off *pro tanto* against the interest charges due from the son on account of the principal debt, but the plaintiff is not entitled to the profits accruing from the actual operation of the farm.

APPEAL by the plaintiffs, Marjorie F. Warner and others, as administrators, etc., from certain portions of an interlocutory judgment of the Supreme Court, entered in the office of the clerk of the county of Suffolk on the 29th day of March, 1921, upon the decision of the court rendered after a trial at the Suffolk Special Term, in an action to impress a trust upon certain lands and premises, title to which stood in the name of John B. Warner, the deceased father of Terry M. Warner, the deceased, at the time of his death.

This appeal was argued on the 11th day of October, 1921. On October 20, 1921, before decision of the appeal, the death of the plaintiff Terry M. Warner was suggested, and this court ordered that no further proceedings on the appeal be taken until further order of the court. (198 App. Div. 1022.) On November 14, 1921, an order was entered continuing the action in the names of appellants above named as the successors in interest of the deceased plaintiff, appellant. As the appeal was heard upon the original printed case wherein Terry M. Warner, now deceased, was the plaintiff and appellant, and as the points of the parties refer to such original case, reference to the plaintiff and to the defendants in the statement of facts and in the opinion is based upon the original case and points.

John B. Warner died on June 20, 1920, leaving six sons, of whom the plaintiff is the eldest. His wife, the mother of plaintiff, predeceased her husband. Among other property owned by him at the time of his death, he was the record owner of about thirty-five acres of land at Aquebogue in Suffolk county. He left a will devising all of his property to his children other than the plaintiff, to whom he left nothing. His sons Wesley and Hollis were appointed the executors of his will. The plaintiff brings this action in equity to impress a trust upon the real estate above mentioned,

claiming that he is the true owner thereof, and that his deceased father was either a mortgagee in possession or held the property in trust for him.

It appeared on the trial, and the learned judge has found as matter of fact, that in February, 1908, the plaintiff was twenty years of age and was about to marry Marjorie Fanning, a neighbor, his present wife. He was without means, and an agreement was made between his father, John B. Warner, and Joshua T. Fanning, the father of his prospective wife, by which each of the parents agreed to give the sum of $3,000, making an aggregate of $6,000, to start the young couple in their married life. This was accomplished by Joshua T. Fanning, the father of the bride, conveying the farm and premises of the agreed value of $13,000, for the sum of $10,000. The title was conveyed to the father of the bridegroom, who advanced the $10,000, but who agreed to convey it to his son on receiving $7,000, holding the title in the meantime as security. Thus the bride's father and the father of the bridegroom each contributed $3,000. The transaction was closed, the deed delivered and the young married couple went to live on the premises. They remained there for five years, the plaintiff paying the taxes, insurance premiums and improving and maintaining the property. In 1913 the plaintiff and his wife removed from the premises, going at first to Water Mill and then to Greenport in Suffolk county, and subsequently to New Jersey, where they resided at the time of the trial. Upon the trial the plaintiff attempted to testify to the circumstances under which he left the farm with his wife, but his evidence was excluded upon respondents' objection that it was incompetent under section 829 of the Code of Civil Procedure, as it involved a transaction with his deceased father. When the plaintiff and his wife left their home in 1913, the father, John B. Warner, took possession of the property. There is evidence that at the time the plaintiff was in straitened circumstances, and that he owed money to various people, but that his father refused to help him. There was evidence that Fanning, the father of plaintiff's wife, in 1913 offered to pay the $7,000 and asked that the property be conveyed under the original agreement, but

Second Department, December, 1921.          [Vol. 199

Warner, Sr., refused and said that the property had increased in value and he did not propose to sell at that price. The trial justice finds that Warner, Sr., refused to perform and repudiated the contract.

Warner, Sr., having taken possession of the property in 1913, one year thereafter converted part of the premises into a duck farm, erecting incubators and other machinery at a cost of some $9,000, and conducted the business of raising ducks profitably down to the date of his death in 1920. His executors are now in possession and carrying on the business. The plaintiff claimed that during the five years from 1908 to 1913, while he was in possession of the property, he made various payments to his father on account of the $7,000 due on the purchase money. The trial court found the fact of payments aggregating $2,381.22, but refused to find that they were made on account of the balance due on the purchase. There is no finding that the money was applied to any other debt, nor is there evidence of any other debt from plaintiff to his deceased father. The trial justice, while determining the main issue in favor of plaintiff, having found the agreement to hold the property in trust and to reconvey, and having found that the deceased father repudiated the contract, has concluded as matter of law that the plaintiff should not only pay the $7,000 balance of purchase money without deduction, but also the cost to the deceased father of installing the machinery and plant for the duck-raising industry. He ordered a reference to ascertain such cost. He decided that the rents and profits received by Warner, Sr., during his seven years' possession of the premises should be set off against the interest on the $7,000 balance due from the date when the son left the farm. The plaintiff offered to testify to his reasons for vacating the farm in 1913 and to his transactions with his father, but the evidence was objected to by the respondents under section 829 of the Code and was excluded.

The plaintiff appeals from the provisions of the decree which refuse to credit him with the $2,381.22 paid by him to his father; from the allowance to his father's estate of the cost of installing the duck-raising plant amounting to some $9,000; for which sum the estate is given an additional lien

upon the land; and also from the refusal of the judge to compel an accounting for the rents and profits while Warner, Sr., was in wrongful possession. The defendants do not appeal, nor did they present requests to find or file exceptions to the decision made.

*Percy L. Housel,* for the appellants.

*Ernest W. Tooker,* for the respondents.

KELLY, J.:

I am of opinion that on the record presented to this court the plaintiff is entitled to a reversal of so much of the judgment as he appeals from and an affirmative judgment from this court as prayed for, as well as the findings in his favor which were refused, as hereinafter set forth.

In the first place, I think the plaintiff was entitled to credit for the $2,381.22 paid to his father in his lifetime. The learned trial justice found as matter of fact and law that the father held the property impressed with a trust in favor of plaintiff, and that upon payment to the father of $7,000 and interest, plaintiff was entitled to a conveyance of the property. There is no evidence or finding of any other indebtedness from plaintiff to his father. There is evidence that during plaintiff's occupation of the premises he paid his father $2,381.22, and the learned trial justice so found. Plaintiff's attempts to show what the payments were for were excluded on defendants' objections (Code Civ. Proc. § 829) and properly excluded, I think. Respondents argue that possession by the plaintiff of canceled checks and notes indicates nothing, but I cannot agree with them, nor is there any evidence to even suggest the inferences they ask the court to indulge in, that the payments were for " rent " or " fertilizer bills." Defendants offered no evidence to explain the payments. And in the absence of such explanation and in the absence of evidence or finding of any other debt, I think the plaintiff is entitled to the fair inference that the payments were on account of the only debt found to exist, *i. e.,* $7,000. This reduces the principal of the indebtedness, including interest to March 1, 1913, to $6,618.40.

I also think the learned trial justice erred in charging the

plaintiff with the cost of the improvements made by the father after he took possession of the property in 1913. The respondents argue that Warner, Sr., was a "tenant" of the property; that his possession was lawful and with the acquiescence of plaintiff. In such case a court of equity might well allow him for improvements under the cases cited by respondents.

But respondents fail to perceive that the court has determined that the possession of Warner, Sr., was wrongful and in violation of his contract which he had "repudiated." An entirely different rule of law and equity applies to such a case. The learned trial justice said in his oral opinion at the close of the trial that he was "inclined to think" that plaintiff in 1913 "intended to abandon the whole proposition," and he says further of Warner, Sr.: "It is true he went in there, perhaps, improperly, that is, he had no legal right, on my theory of this contract between him and his son, to take possession, but there was an abandonment, a legal abandonment, on the part of the boy, and the natural thing would be for the father to go in and take possession and make these improvements, which he was allowed to do, continuing there until the time of his death. It seems, therefore, that equity would require that in addition to the $7,000, there be impressed upon this property a lien to the extent of the permanent improvements, and I shall limit that to the duck houses." This lien for improvements is a serious matter — the cost was about $9,000.

But there is no evidence that plaintiff "abandoned" the farm.

The findings of the trial justice are:

" 15. That on or about March 22, 1913, the plaintiff removed from the said premises and thereupon said John B. Warner entered into, occupied and possessed himself of the same and continued to hold the same to and until the date of his death in June, '1920. * * *

" 20. That the said John B. Warner in his lifetime and after he took possession of said premises in March, 1913, as above found, to wit, in 1914 placed upon the said premises certain permanent improvements, to wit, certain buildings and appliances and machinery therein for the purposes of a

duck farm and hatchery which have enhanced the value of the premises.

" 21. That said permanent improvements were placed upon the said premises by the said John B. Warner with full knowledge of the contract and of the rights of the plaintiff as hereinbefore set forth.

" 22. That on and prior to December 24, 1907, and thereafter at the times mentioned herein a confidential relationship subsisted between the said Terry M. Warner and his father the said John B. Warner and the said Terry M. Warner relied upon the contract entered into between himself and his father and the said Joshua T. Fanning as above set forth and relied furthermore upon the performance of the same by his said father John B. Warner because of said confidential relationship and the influence which a father has over his son.

" 23. That the said John B. Warner in his lifetime received the consideration of the contract hereinbefore set forth and retained the same and refused to perform that part of the contract on his part to be performed and repudiated said contract.

" 24. That from and after March, 1913, the said John B. Warner occupied the premises aforesaid and in 1914 thereon erected and maintained a duck farm which he carried on successfully during the period between said date and the date of his death, and received the rents and profits from the said farm during his occupancy and retained the same to his own use and thereafter and since his death the defendants Hollis V. Warner and J. Wesley Warner, as executors, etc., of his will and individually have retained possession of said farm and conducted a business thereon and received the rents, issues and profits thereof."

I am at a loss to understand how, upon these facts, the plaintiff is charged with the " cost " to the wrongdoer of the unlawful improvements placed upon plaintiff's property with knowledge on the part of the father of plaintiff's rights.

As long ago as 1815 Chancellor KENT said: " Many a debtor may be able to redeem by refunding the debt and interest, but might not be able to redeem under the charge of paying for the beneficial improvements which the mortgagee had been able and willing to make." (*Moore* v. *Cable,* 1

Johns. Ch. 385, 388.) I have found no departure from this wholesome principle. A wrongdoer, with knowledge of his wrongdoing and of the rights of the true owner has no claim to permanent improvements placed upon the property unlawfully in his possession. If the contrary were the law, he might, as suggested by Chancellor KENT, effectually deprive the true owner of his right to redeem. And this appears to me to be this case.

If there were any evidence of justification, if there were any evidence of the abandonment referred to by the judge, a court might intervene for the benefit of the father and his estate. But I find no such evidence.

To make the plaintiff pay for these improvements seems unjust. The findings of fact made by the learned trial justice and the evidence in the case do not disclose any single fact justifying departure from the rule in such cases. Where a wrongdoer, deliberately, possesses himself of the property of another, repudiating his obligations, and this is the finding of fact, if he sees fit to expend large sums of money in permanent improvements on another man's land, he forfeits the money so expended.

It will be noticed that the plaintiff is excluded from all participation in his father's estate.

Mr. Fanning testified that in 1913, when plaintiff and his wife were still on the farm, " I and Mr. F. A. Sirrine went to John B. Warner's residence at Baiting Hollow, and I told him that I didn't like to see my children turned outdoors, and I offered him seven thousand dollars for the farm, the price which he agreed to sell it to Terry for, or let Terry have it for, rather, and let the children stay there, and he said, ' No,' the property had advanced considerably since he bought it and he wouldn't sell it at that price. * * * I told him that I didn't think that he had quite lived up to his agreement, giving Terry what he agreed to in helping the boy getting started, as he agreed to. It was impossible to get anything out of him. He was very quiet in his conversation. He didn't care to say anything. Q. Did you say anything to him about his holding the farm as security, or did you remind him of any such thing? A. Yes, I think I did. I went through the whole transaction. By the Court: Q. Was

Mr. Sirrine with you, you say? A. F. A. Sirrine. Q. Where is he now? A. Right here in the court room. By Mr. Housel: Q. Did John Warner deny that agreement when you reminded him of it? A. He did not. Q. He refused to do anything, however? A. He did." Mr. Sirrine, called as a witness, corroborated Mr. Fanning's story of the interview, giving the date as early in March, 1913. Plaintiff and his wife left the farm in the latter part of March. The evidence of Mr. Fanning and Mr. Sirrine was not controverted in any way. The trial judge in his oral opinion credited the evidence of Mr. Fanning on all other matters, but did not refer to this conversation. He commented on the delay in beginning the action and said it should have been brought in the lifetime of the father, but it would seem that this criticism applied with greater force to Warner, Sr., who attempted to take the farm which belonged to his son without resort to any legal procedure.

I am also of opinion that the learned trial justice erred in refusing plaintiff's request for an accounting of the rents due for the wrongful use and occupancy of the land by John B. Warner, deceased.

If, as found by the court, the possession was wrongful, I can see no reason for the refusal to order an accounting. The learned trial justice in his fourth conclusion of law says: " It is equitable that interest on said sum [*i. e.*, the balance of $7,000] from March 22d, 1913, to date be offset and balanced against the rents and profits of the premises received by John B. Warner and his estate, and the taxes, insurance and ordinary repairs paid by him and his estate in the same period so that no charge or credit accrue to any party by reason of either account."

But there appears to be nothing in the evidence or the findings of fact warranting such decree. The learned trial judge found as matter of law that possession of the premises " was obtained in the first instance by a repudiation and violation of the trust so found, and in violation of the rights of Terry M. Warner therein." He found as matter of fact that deceased " erected and maintained a duck farm which he carried on successfully during the period between said date [*i. e.*, the unlawful entry] and the date of his death, and

received the rents and profits from the said farm during his occupancy and retained the same to his own use and thereafter and since his death the defendants Hollis V. Warner and J. Wesley Warner, as executors, etc., of his will and individually have retained possession of said farm and conducted a business thereon and received the rents, issues and profits thereof." The learned judge simply declares that " it is equitable " that these rents and profits be set off against the interest. There is nothing in the record to show how the interest compares with the rents and profits. We think the estate should account to the plaintiff for the fair rental value of the premises from the date of the wrongful entry of John B. Warner and that the sum found due as rental should be offset pro tanto against the interest charges. If the rental exceeds the interest charges, nothing is due from the plaintiff. If the interest charges exceed the rental, the plaintiff should pay the balance due to the estate. We are of opinion that the plaintiff cannot recover the profits accruing from the operation of the duck farm.

I recommend that the judgment so far as appealed from be modified by striking therefrom the provision that John B. Warner, deceased, and his executors are entitled to credit and a lien on the premises for the cost of the improvements placed thereon by said John B. Warner, deceased; also by allowing to the plaintiff credit for the sum of $2,381.22 payments made by plaintiff to deceased in his lifetime; also by directing that defendants account for the rental value accruing from the wrongful use and occupation of the property and so as to provide that on said accounting the interest due from plaintiff on the balance due should be ascertained and the accounts of the parties stated. This court reverses the refusal of the trial justice to find the twelfth and twenty-seventh requests for findings of fact, and finds the facts as therein requested. This court also reverses so much of the sixth so-called conclusion of law as declares the respondents entitled to recover the value of the improvements placed upon the premises, also like provisions in the eighth conclusion of law. This court finds the seventh conclusion of law as requested by plaintiff. This court also reverses the refusal to find the sixteenth request for findings of fact presented by plaintiff,

and finds the facts as therein requested, also the seventh conclusion of law requested by plaintiff. This court also reverses the fourth conclusion of law found by the trial justice. And that, as so modified, the judgment be affirmed, but with costs to the appellant to be paid by the defendants Hollis V. Warner and J. Wesley Warner, as executors of the last will and testament of John B. Warner, deceased.

Blackmar, P. J., Mills, Putnam and Manning, JJ., concur.

Interlocutory judgment modified in accordance with opinion, and .as so modified affirmed, with costs to the appellant to be paid by the defendants Hollis V. Warner and J. Wesley Warner, as executors of the last will and testament of John B. Warner, deceased. Settle order on notice.