In the Matter of the Estate of WILLIAM R. SEIGLE, Deceased.*

Surrogate's Court, Westchester County, February 3, 1941.

*Lydecker & Voss* [*Charles A. Voss* of counsel], for Hilda O. Seigle and Julius Rothschild, as executors, etc.

*Littleton & Levy* [*Richard H. Brown* of counsel], for the objectants.

*Burton C. Meighan, Jr.*, special guardian.

MILLARD, S.   The objections filed to the account of the executors herein by Elizabeth Smoot Seigle are disposed of as follows:

Objection designated (1) is overruled and dismissed.   The agreement of January 17, 1935, provides for the manner in which it is to be terminated.   Decedent's liability for the payment of the carrying charges is fixed as of the date of the termination of said agreement.   Since this time has been stipulated on the record, the estate is entitled to credit for the overpayment of taxes beyond the period during which the agreement was in existence.

Objection designated (2) has been the subject of compromise wherein the objectant has agreed to accept, and the executors to pay, the sum of $3,500 in full settlement of interest claimed.

Objection designated (3) is directed to the rejection by the executors of two claims filed by the objectant, one based upon an alleged gift of 100 shares of Johns Manville stock, and the other on a promissory note dated May 29, 1936, in the sum of $7,500.

* Modfd., 262 App. Div. 879.

A disinterested witness testified that during a visit to the Seigle home on Christmas day of 1930, she saw the decedent present to the claimant a red envelope which was received in evidence. This envelope was of the usual Christmas greeting type, containing a sheet of paper bearing the words:

" 100
shares
J. M. Stock to be
delivered to you as
soon as it can be
recorded —

" BOB "

It is conceded that no certificates of this stock were delivered to the claimant nor was any transfer effected on the books of the corporation. In fact, the alleged gift is predicated solely upon the delivery of the above-quoted instrument.

For many years the validity of gifts *inter vivos* has been tested by the rules enunciated in *Beaver* v. *Beaver* (117 N. Y. 421, at p. 428). Under certain circumstances, symbolical delivery of the subject of the gift has received the sanction of the courts. (*Matter of Van Alstyne*, 207 N. Y. 298.) An intention to give, however, no matter how forcefully proved, has never been held sufficient to constitute a valid gift *inter vivos*. (*Young* v. *Young*, 80 N. Y. 422; *Matter of Crawford*, 113 id. 366.) The claimant here strongly relies on the authority of *Matter of Cohn* (187 App. Div. 392), which case is, in my opinion, easily distinguishable from the case at bar. There, the decedent wrote out and delivered to his wife a paper stating in part: " I give this day to my wife, Sara K. Cohn, as a present * * * (500) five hundred shares * * *." The donor died six days after the delivery of this instrument. In the case at bar the paper writing alleged to effectuate the gift states that the stock is " *to be delivered* to you as soon as it can be recorded." (Italics mine.) The donor (this testator) lived until the year 1938, during which time, to wit, on May 26, 1934, the parties to the alleged gift were divorced. A separation agreement dated February 12, 1934, which was received in evidence, makes no mention of the alleged gift, although it otherwise purports to effect a final financial settlement between the parties. In *Matter of Cohn* (*supra*) there is evidence of a gift *in præsenti*, closely followed by death, which are circumstances entirely lacking in the case at bar. I, therefore, hold that the alleged gift of 100 shares of Johns Manville stock has not been proven, and the claim is accordingly disallowed.

Upon the trial of the issues raised by the objections herein, the claimant, Elizabeth S. Seigle, offered in evidence a demand note dated May 29, 1936, in the sum of $7,500 payable to her order. No testimony accompanied its reception in evidence, as the signature was conceded to be that of the decedent. Thereupon the executors offered in evidence six checks aggregating the sum of $7,500 and bearing dates June 2, October 1, 1937, January 14, September 19, October 4 and October 21, 1938. Claimant conceded that she indorsed the check dated June 2, 1937, and received the proceeds, and also that the remaining five checks were deposited to her account in the Riggs National Bank, Washington, D. C., but that the indorsements were not in her handwriting. The exhibits themselves show that they have been collected and there is no contention to the contrary. Testimony of claimant herself as to the purpose for which these checks were given was excluded by the court upon the ground that such testimony was barred by section 347 of the Civil Practice Act. Contention is made that the door had been opened by the executors and hence this testimony should have been received, with which contention the court disagrees. In *Matter of Callister* (153 N. Y. 294, 306), the court, in dealing with a similar situation, stated: "There is a distinction between testimony and evidence, for the former means statements made under the sanction of an oath, while the latter, which includes the former, but is more comprehensive, means whatever is received to establish or disprove an alleged fact. * * * The promissory note given by John Callister to his wife was evidence, but it was not the testimony of a deceased person. It would be a loose and dangerous construction to hold that when an instrument executed by a dead man is read in evidence by those who represent him, the living party to the document can testify to whatever was said and done when it was executed." Applying the law of that case to the one at bar, the reception of the six checks in evidence did not, in my opinion, open the door so as to permit evidence directly within the prohibition of section 347 of the Civil Practice Act. (*Nay* v. *Curley*, 113 N. Y. 575.)

It was stipulated on the record that up to the time of his death decedent made payments regularly in accordance with the terms of the separation agreement, and that upon his death there became payable to the claimant the sum of $76,875, which indebtedness is acknowledged in the account filed. There is no competent proof before the court showing any other indebtedness existing between decedent and this claimant. The general rule is that, in the absence of explanation, the presumption arising from the delivery of a check is that it was delivered in payment of a debt and not as

a loan. (*Koehler* v. *Adler*, 78 N. Y. 287; *Poucher* v. *Scott*, 98 id. 422.) Although her own testimony in explanation of these checks was excluded, claimant was at liberty to offer any other competent evidence in explanation of their purpose. This she failed to do. The law does not presume a gift. (*Grey* v. *Grey*, 47 N. Y. 552.) In *Warner* v. *Warner* (199 App. Div. 159, at p. 163) the court stated: " There is no evidence or finding of any other indebtedness from plaintiff to his father. There is evidence that during plaintiff's occupation of the premises he paid his father $2,381.22, and the learned trial justice so found. Plaintiff's attempts to show what the payments were for were excluded on defendants' objections (Code Civ. Proc. § 829) and properly excluded, I think. Respondents argue that possession by the plaintiff of canceled checks and notes indicates nothing, but I cannot agree with them, nor is there any evidence to even suggest the inferences they ask the court to indulge in, that the payments were for ' rent ' or ' fertilizer bills.' Defendants offered no evidence to explain the payments. And in the absence of such explanation and in the absence of evidence or finding of any other debt, I think the plaintiff is entitled to the fair inference that the payments were on account of the only debt found to exist, *i. e.*, $7,000."

Upon the evidence before me I conclude that claimant has failed to prove her claim based upon the note in question, and that the defense of payment has been sustained. Objectant's claim based upon the note in the sum of $7,500, dated May 29, 1936, is, therefore, disallowed, and objection (3) overruled and dismissed.

The agreement to divide the sum of $902.80, representing interest on legacies, equally among the five children of decedent and Elizabeth S. Seigle is approved.

The application of Julius Rothschild to resign as executor will be granted upon the filing of a supplemental account to date.

Settle decree accordingly.