In the Matter of the Accounting of ELEANOR F. BERGMANN, as Ancillary Executrix of MELVIN F. BERGMANN, Deceased Trustee under the Will of MATHILDE KAUFMAN, Deceased.

Surrogate's Court, New York County, September 14, 1951.

*Mitchell, Capron, Marsh, Angulo & Cooney* for ancillary executrix, petitioner.

*Burke & Burke* for Juana Gil, Viuda de Cabrera, Condesa de Morella, respondent.

*Barry, Wainwright, Thacher & Symmers* for American Society for Prevention of Cruelty to Animals, respondent.

*Joseph A. Cox* for Francis J. Mulligan, Public Administrator of the County of New York, as administrator of the estate of Marie Gomez, deceased, respondent.

*Daniel E. O'Keefe* for National Surety Corporation, respondent.

FRANKENTHALER, S. Deceased's will created a trust for the benefit of her daughter, Marie Gomez, for life with remainder over. Marie Gomez died intestate and without heirs on June 14, 1943, a resident of Seville, Spain, and a citizen of the United States. Letters of administration on her estate were granted to the Public Administrator. At the time of her death, over $9,000 in income from the trust, to which she was immediately entitled,

had accrued for her, and the controversy in this case centers upon the disposition of this accumulated income. Claimant, Juana Gil, asserts that Marie Gomez assigned the money to her by virtue of a letter dated May 15, 1943, which reads in part:

> Ice Raddè Viuda de Diego Gomez,
> Sevilla
> Patio de Banderas 3.
>
> Seville, 15th May, 1943.

Mr. Melvin F. Bergman
The American Fire Ins. Comp.
Washington.

My dear friend:

Since some time I did not hear anything from you, so I send you these lines in order to tell you that I don't feel well, keeping bed frequently and even the doctor says that I would get better I don't feel like that and so I want to settle all my things. I want to distribute all my American money and as I am in the debit of some people and friends I want to make the following transfers:

$1,000 (thousand dollars) to Misses Oshee, Seville, Triana-Tejar

$1,000 (thousand dollars) to Miss Letitia Wright, Washington (she and her mother are old Sevillian friends)

$3,000 (three thousand dolleras) to you (Mr. Melvin F. Bergman)

and the rest of my account and the results of the statement of my mother, after realisation, please transfer, less your expenses, to Misses Juana Gil, Viuda de Cabrera, Condesa de Morella, at Tanger, Carretora del Monte no 191.

By these lines I give you full power (respecting my account and the statement of my mother) to sign in my name every document which would be needed for the execution of my order. You will receive these lines by my old friend Misses Cabrera and to her you may send, through the American Ambassy at Tanger, any further correspondence to me, as I don't want that my american money affairs come to Seville, by reasons which you will remember. The statement of the end account please send it in a closed envelop addressed to me c/o. Mrs. Cabrera, Tanger. * * *

Two days after this letter was written, Marie Gomez instructed her secretary to send a sealed envelope to the claimant in Tangier. The secretary did so, stating in his covering letter that " she (Marie Gomez) entrusted to me a sealed envelope for you which I enclose herewith, telling me that it contained certain dispositions by her on behalf of some of her good friends who have shown affection for her during her life." This statement was confirmed by his testimony at the trial. The claimant received this letter with the enclosure on or about June 20, 1943. The enclosure was the letter dated May 15, 1943, addressed to Melvin Bergman, who was the trustee of the trust hereinbefore referred to. There is no proof as to whether the trustee received a copy of this letter before the death of Marie Gomez.

Claimant asserts that these facts evidence a gift from Marie Gomez to her of the accumulated income. In opposition, the Public Administrator maintains, first, that the assignment was not acknowledged or recorded as required by section 32 of the Personal Property Law and was therefore void, and, second, that in any event there was not an immediate gift.

Section 32 of the Personal Property Law, which applies to the transfer of " the interest * * * of any person in the estate of a decedent ", is inapplicable to the case at bar. On May 15, 1943 — the date of the letter hereinbefore quoted — Marie Gomez had become entitled to the accrued income from the trust under her mother's will. While this money had not been physically severed from the trust, it was, as a matter of law, subject to the immediate call of the life tenant. Thus, Marie Gomez was entitled to assign this accumulated income despite the prohibition of section 15 of the Personal Property Law (*Matter of Valentine,* 5 Misc. 479). In these circumstances, the income which had accrued to her can not be deemed an " interest " in her mother's estate within the requirements of section 32. Moreover, the recording provisions of the statute were intended for the protection of subsequent assignees and do not affect the validity of an assignment as between the parties thereto (*Matter of Kitching,* 141 Misc. 704; see *Matter of Bihn,* 171 Misc. 80, 81).

The primary issue before the court is whether the letter of May 15, 1943, constitutes an effective gift of the accrued income. In order to establish a valid gift, there must be an intent on the part of the donor to divest herself of all title and right to the property, a delivery of the property to the donee and an acceptance by the donee (*Beaver* v. *Beaver,* 117 N. Y. 421, 428). The Public Administrator maintains that the letter was an order upon the trustee and that there was no intent to make an immediate transfer. With this contention the court cannot agree.

It should be noted at the outset that this letter was not written by " counsel learned in the law " (*Farmers' Loan & Trust Co.* v. *Winthrop,* 238 N. Y. 477, 486). On the contrary, it was written by an elderly and ill lady whose knowledge of proper drafting techniques cannot be presumed. The court, therefore, will not test the effect of the letter against rigid standards of legal drafting but instead, it will seek to ascertain the writer's intent and effectuate it so far as the law permits (see *Matter of McVoy,* 106 N. Y. S. 2d 32). Miss Gomez obviously intended to dispose of all of her property located in the United States. She clearly desired to transfer title to her property in the hands of the

trustee and to make the transfer immediately effective. In order to do so, she had the letter of assignment sent directly to the assignee rather than sent to the trustee. Had the latter course been followed, the letter would import an order rather than a present gift and would have been revoked by the death of Marie Gomez. (*Farmers' Loan & Trust Co.* v. *Winthrop, supra.*) In view of the serious illness which she realized might cause her death and the fact that the war had made communication between Spain and the United States difficult, it seems anomalous to say that the effectiveness of her disposition was intended to be contingent upon future action by the trustee. The direction to the trustee to transmit an account, to take the necessary legal steps to carry out the terms of the assignment, did not postpone the immediate effectiveness of the gift (compare *Matter of Cohn,* 187 App. Div. 392, with *Matter of Seigle,* 176 Misc. 15, affd. on this point and mod. on others 262 App. Div. 879). Where the property transferred is in the hands of a third person, a direction to such person to perform whatever acts are necessary to transfer possession will not be construed as limiting the immediate effectiveness of the transfer (*Matter of Frothingham,* 161 Misc. 317; compare *Matter of Kitching,* 141 Misc. 704, *supra*). Accordingly the court holds that decedent intended to make an immediate and present transfer of the assigned property.

The second requisite for an effective gift is that the property be delivered to the donee. Where physical delivery is impossible, either because of the nature of the property (e.g. *Matson* v. *Abbey,* 70 Hun 475, mod. 141 N. Y. 179) or the condition of the donor (e.g. *McGavic* v. *Cossum,* 72 App. Div. 35) the courts permit a constructive or symbolic delivery by the transfer of an instrument of gift (*Heise* v. *Wells,* 211 N. Y. 1; *Matter of Cohn,* 187 App. Div. 392, *supra*). As stated in *Matter of Cohn* (*supra,* p. 396): " in every case of a gift evidenced by the delivery of an instrument of gift, the gift has been sustained." Hence, the delivery of the letter of assignment complies with this requisite. It has been argued, however, that as the donee did not receive the letter until after the donor's death, delivery was incomplete. It should be noted at the outset, that it is not clear whether claimant received the letter before or after the death of Marie Gomez, her testimony having been that she received it " on or about 20 June 1943." Assuming however that the letter was received after Marie Gomez' death, the court nevertheless holds that a present delivery was effected. It is quite clear that Marie Gomez intended to vest title to the fund in the claimant. It is also evident that she took all steps then available

to her to divest herself of dominion and control over the fund. Once the letter was deposited in the mails, the requisite delivery was effected despite the fact that Marie Gomez died before the letter was received by claimant (*Waller* v. *Capper,* 143 Kan. 164; *Taylor* v. *Sanford,* 108 Tex. 340. But cf. *Pikeville Nat. Bank & Trust Co.* v. *Shirley,* 281 Ky. 150). While there is a bare possibility under United States postal regulations, that the sender of a letter may have it returned to him before delivery, the conditions in Europe in 1943 make it highly improbable that such could be done with respect to the letter here in controversy.

Moreover, the fact that claimant may not have learned of the assignment until after Marie Gomez' death does not invalidate the otherwise effective gift. Intent and delivery having been found, "the acceptance * * * may be implied where the gift, otherwise complete, is beneficial to the donee." (*Beaver* v. *Beaver,* 117 N. Y. 421, 429, *supra.*) Acceptance need not be contemporaneous with the delivery (*Van Cleef* v. *Maxfield,* 196 App. Div. 734, 738) and it normally will be implied even though the donee first learns of the gift after the donor's death (*Matter of Tardibone,* 196 Misc. 738; cf. *Hilary Holding Corp.* v. *Brooklyn Jockey Club,* 88 N. Y. S. 2d 198).

Accordingly, the court holds that a valid gift was made by Marie Gomez and that the claimant, Mrs. Juana Gil, is entitled to the assets in controversy. An intermediate decree settling the account and ordering the distribution of all assets except the property here in controversy having been signed, the order herein will direct the payment to the claimant of the sums so reserved and will discharge the accounting party from all liability therefor.

There was received in evidence, subject to a motion to strike, a transcript of proceedings held before the District Court of the District of Columbia, in which the court directed the accountant to satisfy the claims of Misses O'Shee, Letitia Wright and Mr. Melvin Bergman. The motion to strike is granted as the determination in that proceeding is not binding upon the Public Administrator who was not a party thereto.

Submit decree on notice accordingly.