Harold Baer, J.
This action was commenced by the plaintiff to recover $4,712 and $2,170 from the defendants. The plaintiff is the registered owner of certificates of indebtedness issued by defendant corporations and representing 20%% of the certificate indebtedness of said corporations. The full indebtedness originally amounted to $527,917.04 and $534,834.15, respectively. The defendant corporations and Sterling National Bank and Trust Company, depositary and registrar under the certificates, answered and served interpleaded complaints upon Evelyn H. Manaeher, former wife of the plaintiff, Lincoln Manaeher, infant, by his guardian ad litem, and G-len Keith Manaeher, who recently reached his majority, both sons of the plaintiff and Evelyn H. Manaeher.
On the defendants’ motion for discharge as mere stakeholders, the Sterling National Bank and Trust Company was discharged, but the motion was denied as to the two corporate defendants (4 Mise 2d 1077). The case was tried before the court without a jury. Formal findings of fact and conclusions of law were waived. The two sons of the plaintiff were inter-pleaded because they claim ownership of the certificates of indebtedness and the interest and principal payments made thereunder by said corporate defendants.
The plaintiff is one of the principal stockholders, an officer and director of the Central Coal Company and various affiliated or subsidiary corporations including the defendant corporations. Through various transactions, two notes issued by the corporate defendants in the amounts heretofore set forth, and called “ the Pittston Notes,” were acquired through funds advanced by the stockholders, each of whom acquired an undivided interest in the notes and in the payments of interest and principal *1072 made thereon. The plaintiff’s interest amounted to 20%%. The notes when purchased were deposited with a law firm which then represented Central Coal Company and its stockholders, and this law firm collected the payments due on the notes and distributed such payments to the persons entitled thereto. At the time of the acquisition of the notes, cancellation was contemplated in exchange for new notes or certificates of indebtedness to be issued by the defendant corporations to the individual stockholders in the amount to which they were respectively entitled. Actually, resolutions to effect this purpose were passed by the corporations in 1944, but the certificates were not issued until 1949. When they were issued with respect to the indebtedness to the plaintiff, they were issued in his name in the sum of $96,564.25 and $87,402.85, respectively. In the interim, however, certain acts of the plaintiff resulted in the claim to title in these certificates of indebtedness by the interpleaded defendants.
In April of 1944 the plaintiff wrote to the attorney who held the notes and stated that in connection with the funds that were furnished during February and March of that year he wished the stock of both of these corporations issued not to him but to Evelyn H. Manacher as trustee for Glen Manacher and Lincoln Manacher. In the same letter he requested that the notes purchased from the Pittston Company be issued to Evelyn H. Manacher as trustee in the same manner as indicated for the stock. Actually, the notes could not be so issued as there was only one note from each corporation in the hands of the attorney, and plaintiff owned a 20%% undivided interest. However, the payments under those notes were thereafter made to Evelyn H. Manacher as. trustee for each of the children. The plaintiff was notified that the notes could not be delivered until they were divided in accordance with the instructions of the respective corporations. After the interest and principal payments were made by the attorneys to Evelyn H. Manacher as trustee during the years 1944, 1945 and 1946, the corporate defendants made later payments to the plaintiff. When the defendants cancelled the notes and issued certificates of indebtedness in 1949 to the parties in interest, all pursuant to the resolutions passed in 1944, they issued these certificates to the plaintiff. The plaintiff and Evelyn H. Manacher were separated in 1947 and later divorced. Evelyn H. Manacher does not appear in this action, although she is one of the interpleaded defendants.
In 1947, in order to procure the interest and principal, and later, the issuance of the certificates of indebtedness to himself *1073 instead of to Evelyn H. Manacher as trustee for the two children, the plaintiff filed with the defendant corporations letters certifying that he was the owner of the 20%% interest in the notes and requesting that the certificates of indebtedness be issued to him. He further agreed to indemnify and hold harmless the corporations from claims of others with respect to the certificates of indebtedness.
Obviously, the two children of the plaintiff, who are the interpleaded defendants herein, knew nothing of these transactions when they occurred. There was much litigation thereafter in which the plaintiff was involved with other members of his family and Central Coal Company and through that litigation the infants or their representatives were apprised of their possible interest in these assets as well as other assets of the plaintiff.
Before determining the main issue, there is the question of jurisdiction and two objections raised at the trial that should be determined.
With regard to jurisdiction, when an action at law is transferred into an interpleader suit the City Court retains jurisdiction for all purposes. While the action of interpleader is in its nature equitable, since the City Court has jurisdiction to entertain it, it follows that the City Court is possessed of powers which are necessarily incidental to such an action. Every power necessary to enable the court to completely execute the jurisdiction conferred upon it is expressly granted. (Connor v. Schaeffel, 19 N. Y. Civ. Pro. Rep. 378; Engel v. Morris Plan Ind. Bank, 183 Misc. 829; United States Mtge. & Trust Co. v. Vermilye & Power, 72 Misc. 375; Krugman v. Hanover Fire Ins. Co., 45 Misc. 346; Greenblatt v. Mendelsohn, 46 Misc. 554.)
The plaintiff during trial objected to the admission in evidence of the judgment roll in the case of Central Coal Co. v. Manacher, which was tried in the Supreme Court before Justice Lynch (N. Y. L. J., Sept. 22, 1955, p. 9, col. 2). The court is of the opinion that the judgment roll was properly admitted for the sole purpose of establishing a course of conduct by the plaintiff. This judgment roll was admitted to show other similar contemporaneous acts by the plaintiff. It was admitted for no other purpose, and plaintiff’s objections are not well taken. For the same purpose the court admitted into evidence plaintiff’s Exhibits 4, 5 and 6, and defendants’ Exhibits W and X. It has been held and is well established that, “ where it is alleged that a party has acquired the property of another through some fraudulent device, the charge may be supported by proof of contemporaneous acts of the same character ” (Boyd v. Boyd, *1074 164 N. Y. 234, 241; Altman v. Ozdoba, 237 N. Y. 218, 223-224; Matter of Booth, 215 App. Div. 516, 518). It should be noted that the parties agreed to the use of the record on appeal in lieu of the judgment roll which was not then available, but no part of the case on appeal was admitted into evidence except those items that make up the judgment roll.
Plaintiff also objected to the amendments to the interpleaded defendants’ pleadings to conform such pleadings to the proof. At the time of pleading, the interpleaded defendants were handicapped, lacking knowledge and information thereafter obtained. All of this evidence was disclosed to the plaintiff prior to trial in the motion papers, in the answers of the original defendants and in the examination before trial. The plaintiff cannot justifiably plead surprise. The evidence adduced and the amendment to the pleadings to conform to that evidence was known to the plaintiff. Further, the amendments neither change the interpleaded defendants ’ theory of recovery, nor do they change the issue. At all times the simple issue was and remains: Did plaintiff divest himself of the title to the certificates of indebtedness ? Are these certificates the property of his two sons? Finch v. Foster Co. (197 App. Div. 172) cited by plaintiff is not applicable and, further, it was overruled by the Court of Appeals (233 N. Y. 619). (Civ. Prac. Act, § 434; Gallagher v. Perot, 122 Misc. 845, 851; Harriss v. Tams, 258 N. Y. 229, 239; Guenther v. Amsden, 16 App. Div. 607, 609-610, affd. 162 N. Y. 601.)
Plaintiff’s oral instructions to the comptroller of defendant corporations and the letter that he wrote to the attorney, escrowee of the notes involved, indicate a gift inter vivos. While the plaintiff used the term trustee, that trustee had no duties to perform and if the instructions were effective, the legal as well as the equitable title devolved upon the cestui que trust immediately. (Jacoby v. Jacoby, 188 N. Y. 124, 129; Sinnott v. McLaughlin, 198 App. Div. 630, 633; Beal Property Law, §§ 91, 92, 93.) The last section is the adoption of the Statute of Uses which modified the common law. It is equally applicable to personal property in this State. (Matter of Reed v. Browne, 295 N. Y. 184; Matter of De Rycke, 99 App. Div. 596; Matter of Sweeney, 155 Misc. 461.)
These facts therefore, under the law must be examined to ascertain whether or not plaintiff made a gift inter vivos to the interpleaded defendants. It must stand or fall as a gift. A gift inter vivos is a gift between the living, it operates, if at all, in the donor’s lifetime, immediately and irrevocably (38 C. J. S., Gifts, p. 781). To effect a gift inter vivos there must be intent by the donor to make a gift, acceptance by the donee *1075 and delivery which transfers title immediately. If these elements are present then the gift is irrevocable. (Beaver v. Beaver, 117 N. Y. 421; Matter of Van Alstyne, 207 N. Y. 298.)
The words and written confirmation are a clear intent by the plaintiff to make a gift. Acceptance of a gift of value is presumed, particularly by an infant donee (Beaver v. Beaver, supra; Matter of Kaufman, 201 Misc. 905; Hillary Holding Corp. v. Brooklyn Jockey Club, 88 N. Y. S. 2d 198).
The third element necessary to effectuate a gift is delivery. The plaintiff contends that there was no delivery and even if there was, such gift was revocable. If there was a gift it is obvious from the cases that it was not revocable. Even in a trust, revocation must be by consent of all parties concerned and cannot be unilateral (Personal Property Law, § 23). There was no physical delivery of the chose in action which is the gift intended by the plaintiff father to his children. In cases involving parent and child, direct evidence is ordinarily unobtainable or difficult to obtain and the courts are liberal in relaxing the necessity of direct proof (Matter of Brady, 228 App. Div. 56, affd. 254 N. Y. 590). Nevertheless, proof of delivery is necessary to complete a present gift. Such proof may vary under the circumstances of each case. Here, the property, an undivided interest in a note, was in the hands of a third person and physical delivery from the donor to the donee was not possible. When physical delivery is not possible, constructive or symbolic delivery has been held sufficient. The determinative factors are that the donor divest himself of title and do all that he can under the circumstances to vest that title in the donee. (38 C. J. S., Gifts, p. 797; Matter of Dunne, 136 Misc. 250, 251, affd. 232 App. Div. 831; Matter of Frothingham, 161 Misc. 317; Matter of Kaufman, 201 Misc. 905, supra; Matter of Cohn, 187 App. Div. 392, 395.)
In my opinion, plaintiff did all that it was possible to do to effectuate a delivery of an undivided interest in a note which was in the hands of a third party. Added to the oral gift (the comptroller Fishback’s testimony) and written confirmation there is the fact that these were followed by the payment of interest and principal in conformity with plaintiff’s intention, for a period of three years. While such payments in and of themselves are not conclusive proof of delivery of the principal gift, such payments must be considered as so related to the ownership of the notes as to further confirm that title was in the donees who received such payments.
After the defendants and the interpleaded defendants offered evidence to prove the gift, the plaintiff offered some instruments *1076 and letters into evidence but did not testify. One letter from the attorney to the plaintiff dated in 1947 intimates that plaintiff retained the control over the notes held in escrow. This was admitted into evidence as there was no objection raised but it was not the best evidence. Either the attorney or the plaintiff could have offered more acceptable evidence. The facts were proved in this case by the testimony of the comptroller of the defendant corporations and by documentary evidence. The interpleaded defendants admittedly had no knowledge of the transaction. The only one available who must have known the true facts was the plaintiff. He did not testify although he was present in court. He was the only one who could have refuted the testimony of the defendant’s witness. He could have testified as to his own intent and to the facts surrounding delivery. His failure to so testify warrants a most favorable interpretation of the oral evidence and documentary proof offered by the defendants and the interpleaded defendants to the effect that this plaintiff intended to make a gift and deliver title- to his two sons. (Mullen v. Quinlan & Co., 195 N. Y. 109; Polachek v. Neiv York Life Ins. Co., 147 Misc. 16, 22, affd. 240 App. Div. 1028; Isquith v. Isquith, 229 App. Div. 555, 559.) This is particularly so in view of the parent-child relationship between the plaintiff and the interpleaded defendants. (Wood v. Rabe, 96 N. Y. 414; Doheny v. Lacy, 168 N. Y. 213, 222; Allen v. La Vaud, 213 N. Y. 322; Matter of Smith, 243 App. Div. 348, 352.)
I find that the plaintiff did make a gift to the two inter-pleaded defendants, his sons, Glen Keith Manacher and Lincoln Manacher. The gift was plaintiff’s undivided interest of 20%% in the Pittston notes which later was converted by the two corporate defendants into certificates of indebtedness. One half of the principal amount of said certificates of indebtedness is the property of each of the two interpleaded defendants.
Nothing that the plaintiff or the defendant corporations did thereafter may deprive these two children of their property and they are now the owners of said certificates of indebtedness and are entitled to have the certificates of indebtedness registered in their names. The certificates of indebtedness issued to the plaintiff by the defendant G. S. D., Inc., numbered 33 to 41, inclusive, each for $10,000, and number 42 for $6,584.25, and totalling $96,584.25, and those issued to the plaintiff by the defendant S. F. Co., Inc., numbered 30 to 37, inclusive, each for $10,000, and number 45 for $7,402.85, and totalling $87,402.85, are ordered to be delivered to the respective corporations and cancelled by them. Said corporations are ordered to issue new certificates of indebtedness to each of the inter- *1077 pleaded defendants for one half of the principal amount. The funds now held by the Sterling National Bank and Trust Co. in the sum of $4,712 and $2,170, pursuant to the prior order of this court, are ordered paid by said bank. One half of each of the aforesaid funds is to be paid to each of the said interpleaded defendants, after the Sterling National Bank and Trust Co. deducts the amount of $350 ($175 from the share of each inter-pleaded defendant) as its fee pursuant to order entered simultaneously herewith. Settle decree on notice which may include a 10-day stay.